[No. 4096-8-III.  Division Three.  July 27, 1982.]

PATRICIA J. PIMENTEL, *Appellant,* v. ROUNDUP
COMPANY, *Respondent.*

*J. Michael Koch* and *Kevin P. Moran,* for appellant.

*Terry A. Brooks, Philip A. Lamb,* and *Brooks, Larson & Abeyta,* for respondent.

McInturff, C.J.—Patricia J. Pimentel appeals an adverse judgment in a personal injury action.

On September 16, 1978, Mr. and Mrs. Pimentel traveled from Bremerton to Yakima to spend the weekend. At approximately 4 p.m. they stopped at a Yakima Fred Meyer store to purchase a razor for Mr. Pimentel. While in the store they were attracted to a magazine rack which contained books on home remodeling. On the bottom shelf of the bookrack were displayed two or three 2–gallon paint cans weighing in excess of 20 pounds which measured 8 3/16 inches in diameter at the base and extended to 9 1/2 inches in diameter at the top. The base of the bucket allegedly hung over the lip of the shelf by 3 3/16 inches.[1] One paint bucket inexplicably fell on Mrs. Pimentel's foot while she was standing in front of the bookrack, causing severe nerve injuries.[2] According to Mr. and Mrs. Pimentel, neither of them touched the buckets nor did they notice them prior to the accident. A Fred Meyer employee testified the paint buckets were placed on the shelf around noon of the same day and were in their proper position at 3 p.m. that afternoon.

Prior to trial, Fred Meyer allowed Mrs. Pimentel to

---

[1]One store employee testified to a store policy which did not allow regular metal paint buckets to extend more than 1 inch over the shelf. Another employee testified the bucket which injured Mrs. Pimentel protruded 1 7/8 inches.

[2]Mrs. Pimentel indicated that standing for more than one–half hour causes her foot to become numb, cold and painful.

depose its expert, Mr. C. V. Smith. At trial, Fred Meyer decided not to call Mr. Smith as a witness. Mrs. Pimentel unsuccessfully attempted to publish his deposition. The jury returned a verdict in favor of Fred Meyer.

Initially, Mrs. Pimentel assigns error to the trial judge's refusal to give an instruction which provided that a proprietor of a self–service operation does not require actual or constructive notice of the existence of a dangerous condition.[3] She maintains the owner of a self–service establishment has actual notice that the mode of operation creates certain foreseeable risks of harm to consumers since items may be dangerously relocated by patrons handling merchandise. She essentially maintains that had the jury not been instructed that actual or constructive notice needed to be shown, it might have found that the display at Fred Meyer created a foreseeable risk of danger to custo-

---

[3]Proposed instruction 5 stated:

"The owner or operator of a self–service establishment must exercise reasonable care in protecting his business invitees against foreseeable risks. The owner or operator of such a self–service establishment has actual notice that his self–service mode of operation creates certain risks of harm to his customers. Since a self–service operation involves the reasonable probability that these risks will occur, these risks are foreseeable. Thus, it is not necessary for the Plaintiff to show actual or constructive notice of the specific hazard causing injury. It therefore is your task to determine whether the proprietor has taken all reasonable precautions necessary to protect his invitees from these foreseeable risks, and in making this determination you may consider the following factors:

"(a) The nature of his business

"(b) The nature of his customers

"(c) The standards adopted to display his merchandise

"(d) The housekeeping procedures which he has instituted to discover and remove conditions which may cause injuries

"(e) Whether there is a system of regular inspection of display areas where merchandise might be unsafely stacked by his employees, or handled and unsafely placed by other patrons

"(f) Such other facts and circumstances revealed by the evidence having a bearing on the question of reasonable protection."

The court instead gave instruction 16, which stated in part:

"In order to support a finding of negligence, a temporary unsafe condition on the premises must either have been brought to the actual attention of the defendant or its employees, or it must have existed for a sufficient length of time and under such circumstances that the defendant or its employees should have discovered it in the exercise of ordinary care."

mers. We agree and remand for a new trial using the proposed instruction.

A proprietor owes to his or her invitees a duty to maintain the premises in a reasonably safe condition. *Hemmen v. Clark's Restaurant Enters.*, 72 Wn.2d 690, 434 P.2d 729 (1967). Generally, the plaintiff must show the proprietor had actual knowledge of the condition or that the condition had existed long enough that the proprietor in the exercise of ordinary care should know of it and remove the danger. *Presnell v. Safeway Stores, Inc.*, 60 Wn.2d 671, 374 P.2d 939 (1962); *see also Morton v. Lee*, 75 Wn.2d 393, 450 P.2d 957 (1969); Restatement (Second) of Torts § 343 (1965).

In *Morton* the plaintiff stepped on an apricot on the walkway at or near the entrance of a food market which was not a complete self–service operation. The court noted the decisive issues were how long the hazardous condition existed and the opportunity for discovery by the proprietor. *Morton*, at 399. The court determined the proprietor must have actual or constructive knowledge of the existence of the condition for liability to attach. *Morton*, at 397.

Later, in *Ciminski v. Finn Corp.*, 13 Wn. App. 815, 537 P.2d 850 (1975), *review denied*, 86 Wn.2d 1002 (1975), Division Two of this court took the "next logical step from *Morton*" in a self–service operation setting. In *Ciminski*, the plaintiff was injured when she slipped while walking along the counter of a self–service cafeteria–style establishment. The court observed:

> It is common knowledge that the modern merchandising method of self–service poses a considerably different situation than the older method of individual clerk assistance. . . . Clerks replenish supplies by carrying them through the area the customer is required to traverse when selecting items. Customers are naturally not as careful in handling the merchandise as clerks would be. They may pick up and put back several items before ultimately selecting one. Not unreasonably they are concentrating on the items displayed, which are usually arranged specifically to attract their attention. Such con-

ditions are equally typical of self–service restaurants and the most common self–service operation, the modern supermarket.

An owner of a self–service operation has actual notice of these problems. In choosing a self–service method of providing items, he is charged with the knowledge of the foreseeable risks inherent in such a mode of operation. The logic of this rule is obvious if it is remembered that if a clerk or other employee has been negligent, the employer is charged with the responsibility of creating a dangerous condition. *In a self–service operation, an owner has for his pecuniary benefit required customers to perform the tasks previously carried out by employees.* Thus, the risk of items being dangerously located on the floor, which previously was created by the employees, is now created by other customers. But it is the very same risk and *the risk has been created by the owner by his choice of mode of operation.* He is charged with the creation of this condition just as he would be charged with the responsibility for negligent acts of his employees. *A pattern of conduct, such as self–service, is as permanent and the risks from such pattern as foreseeable, as a deceptive condition.* An owner is required to take reasonable precautions against such deceptive conditions on his premises to prevent injury to patrons. . . .

. . . The realities of a self–service operation cannot be ignored, and what is reasonable for the Ma and Pa grocery store where Pa retrieves each item from behind the counter for the customer may not be reasonable where the customers have access to every item for sale and are subject to the whims of all other customers in handling that merchandise.

(Citations omitted. Italics ours.) *Ciminski,* at 818–20. Thus, in self–service food operations where the operating methods of the proprietor are such that dangerous conditions are foreseeable, the logical basis of the notice requirement dissolves.

Mrs. Pimentel urges that *Ciminski* is equally applicable to all self–service style operations since a business that chooses to adopt the self–service merchandising technique which allows for lower overhead and greater profits, is in a

better position to accept the risks involved.[4] We agree and note with approval the applicability of the following excerpt on slip–and–fall cases from Annot., *Store or Business Premises Slip–and–Fall: Modern Status of Rules Requiring Showing of Notice of Proprietor of Transitory Interior Condition Allegedly Causing Plaintiff's Fall,* 85 A.L.R.3d 1000, 1004 n.15 (1978):

> The self–service marketing method has achieved widespread acceptance within the relatively recent past in a variety of commercial enterprises, particularly supermarkets, *discount department stores,* and restaurants. While the self–service marketing method has economic advantages for the store owner or business proprietor and permits consumers the freedom to browse, examine, and select the merchandise that they desire, certain problems are inherent in the method which are infrequently encountered under traditional merchandising methods that involve individual customer assistance. For example, customers are often not as careful in handling merchandise as are employees; merchandise may be spilled, dropped, and left on the floor as a result of customer carelessness . . .
>
> *[C]ourts are recognizing, either explicitly or implicitly, that by utilizing the self–service marketing method the store owner or business proprietor is himself creating the dangerous condition, and that therefore the owner or proprietor is deemed to have actual notice of*

---

[4]In a smaller owner–operated grocery store, the operator would more likely be immediately aware of and correct any disarray than would the operator of a large self–service retail outlet which depends on profits from a mass of consumers, large volume and low overhead (*e.g.,* a minimum of employees). *See* Annot., *Liability for Injury to Customer or Other Invitee in Store by Falling of Displayed, Stored, or Piled Objects,* 38 A.L.R.3d 363, 367 n.4 and accompanying text (1971).

The hypothetical scenario posed in Mrs. Pimentel's reply brief is worthy of paraphrase. Assume a patron of the type of self–service cafeteria discussed in *Ciminski* picked up a dessert plate containing a piece of pie, changed his mind and replaced the plate in an unstable position. Later, Mrs. Ciminski proceeds through the cafeteria line and stands in front of the dessert section attracted to a piece of cake. Without warning and without contact by Mrs. Ciminski, the pie plate inexplicably falls from its unstable perch causing a severe injury to her foot. Should it make a difference whether the injury results from a slip–and–fall or a falling piece of merchandise?

*the condition, so that no proof of notice by the plaintiff is necessary.*

(Italics ours.)

We find no logical reason to distinguish between slip–and–fall cases and falling merchandise cases in a self–service setting. The foreseeability that customers will handle, examine and replace merchandise is a risk within the reasonable foresight of the storekeeper and the same to both situations.

An invitee is entitled to assume proper care has been exercised to make the premises safe and is not required to be on the alert for unsafe conditions. W. Prosser, *Torts* § 61 (4th ed. 1971); *Mealor v. S.H. Leggitt & Co.,* 567 S.W.2d 51 (Tex. Civ. App. 1978).[5] Professor Prosser observes:

> [W]here the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee . . . something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display . . .

W. Prosser, at 394. *See also Waco v. Haynes,* 562 S.W.2d 546, 550 (Tex. Civ. App. 1978) (duty to protect invitee from latent danger). Additionally, courts have uniformly held invitees have a *right to assume* that it is safe to walk or stand in aisles for the purpose of selecting prospective purchases. *See generally* 1 J. Dooley, *Modern Tort Law* § 19.06 (Supp. 1981).[6] Moreover, a customer in a modern self–service outlet is under no duty to see potential danger in his or her path since contemporary mass marketing techniques[7] divert the shopper's attention. *See Jaworski v.*

---

[5] *See also Jaudon v. F.W. Woolworth Co.,* 303 F.2d 61, 62 (4th Cir. 1962); *Yuma Furniture Co. v. Rehwinkel,* 8 Ariz. App. 576, 448 P.2d 420, 422 (1968).

[6] *Cf. Wilder v. Chase Resorts, Inc.,* 543 S.W.2d 527 (Mo. Ct. App. 1976) (hotel guest has a right to assume premises is safe and would not have to prove either actual or constructive knowledge on the part of the defendant of a dangerous condition which caused the injury).

[7] The testimony revealed that the customer count on a normal Saturday is

*Great Scott Supermarkets, Inc.,* 403 Mich. 689, 272 N.W.2d 518 (1978); *Szyplinski v. Midwest Mobile Home Supply Co.,* 308 Minn. 152, 241 N.W.2d 306, 310 (1976).

Thus, a plaintiff consumer should not be required to prove actual or constructive knowledge of a dangerous condition in totally self–service operations. A store owner owes a duty to provide a safe place for customers to shop. Once a hazard is shown to have caused an injury to the consumer, the burden of proof shifts to the store owner to show that he was not negligent and kept the premises in a reasonably safe and properly maintained condition. As stated in *Morais v. Schwegmann Bros. Giant Supermarket,* 290 So. 2d 357, 360 (La. Ct. App. 1974):

> We cannot justify requiring the injured plaintiffs who had no control or authority over defendant's premises and who only minutes before arrived on the premises, to prove defendant's negligence. The defendant does not have an impossible task of proving when the last inspection was made and the condition of the display at that time, thus its freedom from negligence.
>
> . . . If [the consumer] can establish her freedom from causation, the burden then must shift to the storekeeper to rebut the presumption of fault for the reason that he is most cognizant of facts necessary to decide the issue.

(Citations omitted.)

Mrs. Pimentel also assigns error to the court's refusal to allow the publication of a deposition taken by her attorney of Fred Meyer's expert, Mr. C. V. Smith.[8] She urges that since Fred Meyer stipulated Mr. Smith's deposition could be used for all purposes allowed by the civil rules she was entitled to use it at trial.

The trial court refused to admit the deposition based

---

between 1,000 and 2,000 patrons.

[8]The essential point of Mr. Smith's testimony was that the paint buckets became balanced on the shelf at 3 3/8-inch overhang and would fall at 3 1/2 inch if jogged. Thus, because the buckets hung over the edge 3 3/16 inches, the Pimentels argued Mr. Smith's testimony was critical to show that by moving only 3/16 inch, the buckets reached balance, and by moving 5/16 inch, they fell.

upon its interpretation of *Crenna v. Ford Motor Co.*, 12 Wn. App. 824, 532 P.2d 290, *review denied,* 85 Wn.2d 1011 (1975). There, the plaintiffs brought an action against Ford Motor Company when their Ford vehicle went out of control and struck an abutment. Ford sought to subpoena an expert consulted by the plaintiffs whose deposition had not been taken. Ford objected to the denial of access to the expert. The trial court based its ruling upon CR 26(b)-(4)(B):

> A party may discover facts known or opinions held by an expert who is *not* expected to be called as a witness at trial, *only* as provided in Rule 35(b) or upon a *showing of exceptional circumstances* under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

(Footnote omitted.) *Crenna,* at 828. Division One of this court noted CR 26(b)(4)(B) placed the burden of showing impracticability "upon the party seeking discovery before a 'consulting' expert may be interrogated." *Crenna,* at 831. Since Ford had not made any attempts to depose the Crennas' expert and since it had an opportunity to examine the vehicle and its parts immediately after the accident, the court determined the burden had not been carried.

Here, Mrs. Pimentel argues, in distinguishing these facts from *Crenna,* that Mr. Smith was deposed at her expense and with the consent of Fred Meyer prior to trial; that Fred Meyer stipulated to use of the deposition under the civil rules; and that she had difficulty in gaining access to the display shelves prior to trial which further handicapped her case in chief. In essence, however, it is contended she relied on the stipulation given by Fred Meyer that the deposition could be used for all purposes allowed by the civil rules,[9] specifically CR 32(a)(3)(B) which states:

> (3) The deposition of a witness, whether or not a party,

---

[9]She also claims that at the time Mr. Smith's deposition was taken, Fred Meyer had already dismantled the recreated display which precluded any other independent examination.

may be used by any party for any purpose if the court finds . . . (B) that the witness resides out of the county and more than 20 miles from the place of trial, unless it appears that the absence of the witness was procured by the party offering the deposition; . . .

It is undisputed that Mr. Smith's residence was Seattle, Washington which would qualify Mrs. Pimentel's use of the deposition.

█ Generally, a party has a right to protect experts called in preparation for trial. *See* 4 J. Moore, *Federal Practice* ¶ 26.66 (2d ed. 1982). However, both our Rules of Evidence and rules of civil procedure provide for fairness in administration and elimination of unjustifiable expense and delay so that truth may be ascertained. ER 101; CR 1. "[A] just result is more likely to be achieved at trial if every party to a civil action has access to all relevant information in the possession of any person unless the information is privileged." *Crenna,* at 828. Additionally, in *Sneddon v. Edwards,* 53 Wn.2d 820, 823, 335 P.2d 587 (1959) (rendered prior to the adoption of our present civil rules), the court found that employing an expert does not prevent him from testifying. The court observed:

> Appellants contend that it was error for the trial court to exclude the testimony of one William Enkeboll, an engineer. Mr. Enkeboll was employed by respondents to make an investigation of the [mud] slide. According to appellants' offer of proof, Mr. Enkeboll's opinion as to the origin of the slide did not correspond to respondents' theory, so they chose not to call him as a witness. When appellants attempted to have him testify, respondents objected; and the trial judge sustained their objections— apparently on the ground that, since respondents had paid him for making his investigation, they were privileged to keep him from testifying.
>
> The reason given was not adequate for excluding Mr. Enkeboll's testimony.

(Citations omitted.)

Alternatively, a party has the right to protect experts called in preparation for trial. *See* 4 J. Moore, *Federal Practice* ¶ 26.66 (2d ed. 1982). However, as noted in *Phipps*

*v. Sasser,* 74 Wn.2d 439, 445 P.2d 624 (1968), any right or privilege may be waived. *See, e.g., Cox v. Commonwealth Oil Co.,* 31 F.R.D. 583 (S.D. Tex. 1962) (waiver of right to shield expert from deposition by attaching the expert's affidavit to a motion for summary judgment). The instant stipulation allowed use of the deposition for all purposes under the civil rules. Under CR 32 it has been decided that a deposition may be offered by either side. *See Bertsch v. Brewer,* 97 Wn.2d 83, 89, 640 P.2d 711 (1982); *Prince v. Hutchinson,* 49 Ill. App. 3d 990, 365 N.E.2d 549, 552 (1977). Under the circumstances of this case we deem a waiver by deposition exists; consequently, CR 32 allows either party to use the deposition in its case in chief.

We distinguish this case from our recent decision in *Mothershead v. Adams,* 32 Wn. App. 325, 647 P.2d 525 (1982). In *Mothershead,* like *Crenna,* there was no deposition of the expert witness. In *Mothershead* the defendant's expert was not listed as a witness to be called at the trial. Here, the deposition of the expert was taken and the defendant stipulated that the deposition could be used for all purposes allowed by the civil rules.

Thus, under all the circumstances presented we conclude the court erred in refusing to permit circumstantial evidence which may have assisted in explaining what caused the paint can to fall. Fundamental fairness is the basic concern in the exercise of judicial discretion when discovery of an adversary's work product is sought. *Crenna,* at 832 n.3.

The judgment of the Superior Court is reversed.

ROE, J., concurs.
MUNSON, J., concurs in the result.

Reconsideration denied September 13, 1982.

Review granted by Supreme Court December 17, 1982.