[No. 23108–1–I.   Division One.   May 14, 1990.]

JOANNE PETERS, ET AL, *Appellants,* v. JACK D. BALLARD, ET AL, *Respondents.*

922

*Ralph J. Brindley* and *Karen J. Vanderlaan,* for appellants.

*Tyna Ek,* for respondents.

THIBODEAU, J.*—Joanne and Leon Peters appeal from a superior court order of dismissal following a defense verdict in their medical malpractice claim against Dr. Jack D. Ballard and his wife.

## FACTS

On October 15, 1979, Dr. Jack Ballard performed a surgical procedure called horizontal gastroplasty, also known as stomach stapling, on Joanne Peters. The purpose of the surgery was to treat Peters' obesity because she weighed in excess of 300 pounds. The surgery was successful and by July 1980, Peters had lost over 78 pounds. However, by March 1981, Peters had regained 19 pounds. Despite attempts at dietary control, Peters continued to regain weight.

In the spring of 1982, Peters was informed by Dr. Ballard's office of a revision surgery that had been developed to stem the weight gain that oftentimes would occur even after a successful horizontal gastroplasty was performed. Peters met with Dr. Ballard at his office on April 27, 1982, and they discussed the procedure. On June 9, 1982, Dr. Ballard performed the revision surgery on Peters.

The day after the surgery, Peters developed an infection in her abdominal cavity. It is unclear what caused the infection. From June 11 through 13, 1982, Dr. Ballard was out of town at a conference. During that time, he left Peters in the care of Dr. Roger Evans. Drs. Evans and Ballard were both employees and shareholders of the same professional service corporation at that time. Dr. Evans had assisted Dr. Ballard on both of Peters' surgeries.

By June 14, 1982, Peters' condition worsened. The next day, Dr. Ballard surgically explored Peters' abdominal cavity and found evidence of infection, but no stomach perforation. Peters eventually improved and was discharged from Highline Community Hospital on June 26, 1982.

---

*Judge Joseph A. Thibodeau is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150 and CAR 21(c).

Approximately 1 week later, Peters was readmitted to the hospital with a fever. The next day, she transferred to Swedish Hospital and came under the care of Dr. Jay Kranz. Dr. Ballard did not treat Peters after this point.

A test performed on July 31, 1982, indicated that Peters had a stomach perforation. It is unclear whether that perforation existed prior to Peters' discharge from Highline Community Hospital on June 26, 1982. After learning of this perforation, Dr. Kranz waited 3 days to operate on Peters.

Following surgery, Peters was discharged on August 28, 1982. However, 3 days later she was readmitted with a massive gastrointestinal bleed. Emergency surgery was performed by Dr. Kranz on September 1, 1982. During this surgery, Dr. Kranz ran out of cross–matched blood and had to terminate the procedure before he could reconnect Peters' esophagus and stomach. This procedure was completed at a later date with a piece of Peters' colon being interposed between her esophagus and stomach. Peters remained hospitalized at Swedish Hospital until March 31, 1983. Numerous related admissions followed.

Peters and her husband sued Dr. Ballard for medical malpractice, failure to obtain informed consent, and a violation of the Washington Consumer Protection Act, RCW 19.86. After trial, the jury found in favor of Dr. Ballard on the medical malpractice claim and the failure to obtain informed consent. Since the jury found in Dr. Ballard's favor on the informed consent claim, they did not reach the Consumer Protection Act claim. Peters appeals.

TESTIMONY OF DR. KRANZ

Peters argues that the trial court misperceived the import of CR 26(b)(4)(B) when it permitted Dr. Ballard's counsel to elicit testimony from Dr. Kranz regarding his opinion on the negligence of Dr. Ballard in the treatment of Peters. Peters claims that although Kranz was originally designated as one of her expert witnesses, Peters indicated

to the court at trial that Kranz's testimony would be limited to his factual observations as her subsequent treating physician. Peters argues that allowing the defense to expand its inquiry to include Dr. Kranz's expert opinion on the negligence issue effectively enabled Dr. Ballard to call Dr. Kranz as his own expert contrary to the dictates of CR 26(b)(4)(B). Dr. Ballard responds that the restrictions imposed by CR 26(b)(4)(B) only apply to consulting experts that the proponent chooses *not* to call at trial.

CR 26(b)(4) provides in pertinent part:

(B) A party may discover facts known or opinions held by an expert who is not expected to be called as a witness at trial, only as provided in rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

CR 35(b) states:

(1) If requested by the party against whom an order is made under rule 35(a) or the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his finding, including results of all tests made, diagnosis and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party shows that he is unable to obtain it. The court on motion may make an order against a party requiring delivery of a report on such terms as are just, and if a physician fails or refuses to make a report the court may exclude his testimony if offered at the trial.

(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition.

(3) This subsection applies to examinations made by agreement of the parties, unless the agreement expressly provides otherwise. This subsection does not preclude discovery of a report of an examining physician or the taking of a deposition

of the physician in accordance with the provisions of any other rule.

While CR 26(b)(4) only addresses pretrial discovery of an expert's opinion, in *Crenna v. Ford Motor Co.,* 12 Wn. App. 824, 532 P.2d 290, *review denied,* 85 Wn.2d 1011 (1975), the court recognized that the protections of the rule continue through trial. In *Crenna,* the defense attempted to subpoena a metallurgic expert that plaintiff had consulted but had determined not to call at trial. Plaintiff successfully moved to quash the subpoena. On appeal, the court affirmed the trial court and held that although the rule itself concerned only discovery, to effectuate the purpose of the rule, the protections "carry over into the trial." *Crenna,* at 828. This rationale was later applied to shield a defendant's medical expert from a plaintiff's deposition in *Mothershead v. Adams,* 32 Wn. App. 325, 647 P.2d 525, *review denied,* 98 Wn.2d 1001 (1982).

One month after *Mothershead* was decided, the court rendered its decision in *Pimentel v. Roundup Co.,* 32 Wn. App. 647, 649 P.2d 135 (1982), *aff'd,* 100 Wn.2d 39, 666 P.2d 888 (1983). In *Pimentel,* the plaintiff appealed the trial court's refusal to allow publication of a deposition taken of a defense expert by the plaintiff. The trial court had refused to admit the deposition based upon *Crenna.* On appeal, the court recognized that generally a party has a right to protect experts called in preparation for trial. *Pimentel,* at 656. However, it distinguished *Crenna* because there was no deposition of the expert witness taken by the opponent in that case. Likewise, *Mothershead* was distinguished because the expert in question was not listed as a witness to be called at trial. The *Pimentel* court held that the deposition should have been admitted because not only was it taken by the plaintiff, but the defense had stipulated to its admissibility for all purposes under the civil rules. *Pimentel,* at 657. This ruling was subsequently affirmed by the Washington Supreme Court in *Pimentel v. Roundup Co.,* 100 Wn.2d 39, 666 P.2d 888 (1983). None of these cases

address the precise issue presented in the case at bar, however.

Unlike the experts in the aforementioned cases, Dr. Kranz was not just an expert retained by Peters for trial purposes, he was also Peters' subsequent treating physician and, therefore, an important factual witness. Although he was deposed by Dr. Ballard and rendered his expert opinion during that deposition, no stipulation to the use of the deposition was entered. Further, although Peters first indicated that Dr. Kranz would be an expert witness, Peters changed Dr. Kranz's status at trial to that of only a fact witness. Peters' counsel intended to limit direct examination to the facts observed by Dr. Kranz.

Courts in other jurisdictions have recognized that a witness may be an expert as to some matters and an "actor" or "viewer" as to others. *Marine Petroleum Co. v. Champion Petroleum Co.*, 641 F.2d 984, 989 (D.C. Cir. 1979) (one who, though an expert, derives information simply as "an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit . . . should be treated as an ordinary witness"); *Quarantillo v. Consolidated Rail Corp.*, 106 F.R.D. 435 (W.D.N.Y. 1985); *Nelco Corp. v. Slater Elec. Inc.*, 80 F.R.D. 411 (E.D.N.Y. 1978); 23 Am. Jur. 2d *Depositions and Discovery* § 73 (1983). Under CR 26(b)(4) the distinction between an expert who is testifying as a fact witness and an expert witness who is testifying as a CR 26(b)(4) expert is whether the facts or opinions possessed by the expert were obtained for the specific purpose of preparing for litigation. CR 26(b)(4); *Adkins v. Morton*, 494 A.2d 652, 657 (D.C. App. 1985); *Abbey v. Jackson*, 483 A.2d 330, 334 (D.C. 1984); *Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397 (E.D. Va. 1975). One court has gone so far as to refer to these expert fact witnesses as "non-26(b)(4) experts". *Lee v. Knutson*, 112 F.R.D. 105, 108 (N.D. Miss. 1986).

Given this recognized distinction, the question then becomes whether Dr. Kranz was actually a CR 26(b)(4)

"expert". In the deposition of Dr. Kranz, the following inquiry was made:

Q. Have you agreed to be an expert witness in this case as well for the plaintiffs?
A. Yes.

Clerk's Papers, at 163.

Q. So I can organize my questions a little better to your opinions, can you tell me what categories you intend to testify in as an expert, if you know?
A. Well, what I know most about is what happened while she was under my care in the hospital. That's probably where I will be most help to anybody as an expert.

Clerk's Papers, at 166–67.

In *Nelco Corp. v. Slater Elec. Inc.*, 80 F.R.D. 411 (E.D.N.Y. 1978), the court held that "the mere designation by a party of a trial witness as an 'expert' does not thereby transmute the experience that the expert witness acquired as an actor into experience that he acquired in anticipation of litigation or for trial." *Nelco Corp.*, at 414. Accordingly, the court ordered the "expert" deponent to appear and be deposed in regard to his interpretation of patent claims underlying the suit that he acquired as an "actor". *Nelco Corp.*, at 416.

The logic of *Nelco Corp.* was extended to a neurologist in *Quarantillo v. Consolidated Rail Corp.*, 106 F.R.D. 435 (W.D.N.Y. 1985). In *Quarantillo*, plaintiff moved for a protective order to preclude the deposition of a neurologist who had treated plaintiff's back injuries for over 14 years. Plaintiff argued that the neurologist was his expert witness and the defense was entitled to learn facts known and opinions held by him only pursuant to Fed. R. Civ. P. 35(b) or 26(b)(4). *Quarantillo*, at 436. The court disagreed and noted that rule 26(b)(4) only applies to facts and opinions of experts acquired or developed in anticipation of litigation for trial. The court found that plaintiff had not demonstrated that the neurologist should be deemed an "expert" rather than a "viewer" or "actor". *Quarantillo*, at 437.

In *Frantz v. Golebiewski,* 407 So. 2d 283 (Fla. Dist. Ct. App. 1981), plaintiff alleged that she was negligently treated by an orthodontist, Dr. Frantz. Plaintiff was subsequently treated for her injuries by Dr. Rubelman. After filing her malpractice action, Frantz's attorney took a sworn statement from Dr. Rubelman without notifying plaintiff's counsel. When this was discovered, plaintiff's counsel moved for production of the statement which the court then ordered. Frantz's attorney refused to comply and was fined. *Frantz,* at 284. On appeal, the court held that the statement need not be produced because Dr. Rubelman was not an expert witness whose information and opinions were acquired and developed in anticipation of litigation or for trial. The court noted the distinction between an examining physician and "a treating doctor like Rubelman, while unquestionably an expert, does not acquire his expert knowledge for the purpose of litigation but rather simply in the course of attempting to make his patient well." *Frantz,* at 285.

Another court has applied the same analysis to a subsequent treating physician. In *Adkins v. Morton,* 494 A.2d 652 (D.C. App. 1985), the plaintiff asserted a malpractice claim against her surgeon following open heart surgery. At trial, the defense called an internist who treated plaintiff following her release from the hospital. The court permitted the internist to testify that plaintiff had not received full–time nursing care at home, but would not permit the internist to explain why such care was not given or whether plaintiff would require such care in the future.

The court based its ruling on the fact that the defense failed to list the internist as an expert witness under CR 26(b)(4). On appeal, the court agreed with the defense contention that the internist was not an expert within the meaning of the rule. *Adkins,* at 656. The court explained that the testimony of the internist was comprised of knowledge and views derived not in anticipation of litigation or trial but rather in the course of his treatment of the plaintiff, for the purpose of providing medical care. *Adkins,*

at 659. "In the status of actor and viewer [the internist] was eligible to testify not only about what his course of treatment for [the plaintiff] had been but also about the reasons he had not ordered home nursing care and about his opinion as to why she would not need such care." *Adkins,* at 658. The exclusion of the evidence was not harmless because the defense was substantially prejudiced in its ability to rebut plaintiff's evidence that the plaintiff required nursing care. *Adkins,* at 659.

In the case at bar, it is undisputed that following her treatment by Dr. Ballard, Peters contacted Dr. Kranz for further care. In his deposition, Dr. Kranz admitted that the information he knew most about was related to what happened to Peters while under his care. Although Peters originally designated him as an expert and Dr. Kranz considered himself an expert, that alone is insufficient to qualify him as an expert under CR 26(b)(4). Dr. Kranz's knowledge and opinions were derived from his role as Peters' subsequent treating physician, not in anticipation of litigation or for trial. Accordingly, Dr. Kranz should be treated as any other witness. Since he was not entitled to the protections of CR 26(b)(4), the trial court did not err in admitting Dr. Kranz's testimony. *See State v. McDonald,* 98 Wn.2d 521, 529, 656 P.2d 1043 (1983).

### DR. KRANZ'S MALPRACTICE

Peters next contends that the trial court erred in permitting the defense to elicit evidence of Dr. Kranz's malpractice in his treatment of Peters. Peters relies upon *Lindquist v. Dengel,* 92 Wn.2d 257, 595 P.2d 934 (1979) for support.

In *Lindquist,* the court ruled that physicians were subject to the general rule that a tortfeasor is liable for not only the injuries he causes, but is "also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner". *Lindquist,* at 262 (quoting Restatement (Second) of Torts § 457 (1965)).

The case was reversed because the jury was not properly instructed on the issue of liability. *Lindquist,* at 263. Peters maintains that under *Lindquist,* the malpractice of a subsequent treating physician is irrelevant and, therefore, evidence of Dr. Kranz's malpractice should have been excluded.

█ █ Peters' argument is not persuasive. A trial court has wide discretion in determining whether evidence will be admitted and the court will not be reversed absent an abuse of that discretion. *State v. Mak,* 105 Wn.2d 692, 702, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986). One of the defense theories was that Dr. Ballard had not been negligent in his treatment of Peters. The defense intended to show that Peters' physical problems were caused by the subsequent treatment of Dr. Kranz. The evidence regarding Dr. Kranz's care was clearly relevant to this theory of defense and was necessary to explain how Peters received her injuries.

Peters correctly notes that the Court of Appeals stated in *Lindquist* that the negligence of the plaintiff's subsequent treating physician in that case was irrelevant. *Lindquist v. Dengel,* 20 Wn. App. 630, 634, 581 P.2d 177 (1978), *aff'd,* 92 Wn.2d 257, 595 P.2d 934 (1979). The case at bar is distinguishable. In *Lindquist,* the plaintiff sought damages resulting from the defendant's failure to promptly diagnose tuberculosis. *Lindquist,* at 631. Accordingly, the negligence of the subsequent treating physician was irrelevant. In the case at bar, the question was whether Peters' injuries were due to the negligence of Dr. Ballard or Dr. Kranz. Further, any possible confusion that this evidence might have caused in the minds of the jurors was ameliorated by instruction 12 which stated:

> A physician, who is under a duty to comply with the recognized standard of practice for his specialty prevailing at the time of treatment, cannot avoid liability which he would otherwise have for aggravation of injuries to his patient, if any, on the ground that it was caused by a subsequent negligent treatment of a later treating physician if the subsequent treatment was necessitated by the first physician's failure to comply with

the applicable standard of care prevailing at the time of treatment by him.

The trial court did not abuse its discretion in admitting the evidence of Dr. Kranz's negligence.

### TESTIMONY OF DR. FOX

Peters claims that the trial court erred in not permitting her to call Dr. Ross Fox as her expert at trial. Peters indicates that Dr. Fox was a "failed" expert of Dr. Ballard that she had deposed prior to trial. Peters maintains that if she waived the privilege of CR 26(b)(4) with regard to Dr. Kranz by permitting his deposition, then Dr. Ballard has also waived the privilege with regard to Dr. Fox.

Peters' argument is without merit. First, the analysis set forth in this opinion indicates that Dr. Kranz was a "non–26(b)(4) expert" and, therefore, was not protected by the provisions of the rule. Hence, finding a waiver was not required for admission of his testimony. Second, unlike Dr. Kranz, Dr. Ballard had not called Dr. Fox to testify in any capacity, and, therefore, he would not be available to Peters according to CR 26(b)(4)(B). Finally, it is difficult to imagine that permitting an expert to answer expert witness questions at a deposition would result in any kind of waiver. In *Delcastor, Inc. v. Vail Assocs., Inc.*, 108 F.R.D. 405 (D. Colo. 1985), the court held that an expert's opinions were properly discoverable even though the expert was only going to testify as a "fact" witness. The court reasoned that the line between fact and opinion is unclear and that facts based upon subjective observations can be tainted by opinions. Therefore, the witness's opinions were properly discoverable because they were reasonably calculated to lead to the discovery of admissible material. *Delcastor,* at 408. Accordingly, under these circumstances an expert witness's opinions would be properly discoverable even if the witness were designated as a fact witness. To consider cooperation

in the discovery process as a waiver would not foster the purpose of the discovery rules. The court did not err in concluding that Peters could not call Dr. Fox as her own expert at trial.

## AGENCY

At the time of Peters' surgery, Drs. Ballard and Evans were both shareholders and employees of the same professional service corporation. When Dr. Ballard left town after Peters' surgery, he left Peters in Dr. Evans' care. Peters argued at trial that Dr. Evans was the agent of Dr. Ballard when Peters was under his care. Peters contends that the trial court erred by failing to instruct the jury that Dr. Evans was the agent of Dr. Ballard as a matter of law. Peters relies primarily upon *Moulton v. Huckleberry,* 150 Or. 538, 46 P.2d 589 (1935) for authority.

In *Moulton,* plaintiff sustained injuries in a fall. She was transported to the offices of her family physician, Dr. Huckleberry. Huckleberry was absent, and plaintiff found Dr. Shininger in charge of the offices and caring for the business. *Moulton,* 46 P.2d at 590. Due to negligent diagnosis and treatment, plaintiff suffered considerable pain and lost part of the function of her left leg. *Moulton,* 46 P.2d at 591. Plaintiff sued Dr. Huckleberry asserting that Dr. Shininger was his agent.

On appeal, the court agreed that an agency relationship existed. The court noted that Dr. Shininger was employed by Dr. Huckleberry to cover for him at his offices. Dr. Shininger received a stipend for his services from Dr. Huckleberry while Dr. Huckleberry collected payment from the patients. The court also noted that Dr. Huckleberry had the right to control Dr. Shininger's actions and had the power to fire him. *Moulton,* 46 P.2d at 593–94.

The case at bar is clearly distinguishable from *Moulton.* Viewing the testimony presented in the light

most favorable to Dr. Ballard, it cannot be stated that Dr. Evans was his agent as a matter of law. *See Thornton v. Annest,* 19 Wn. App. 174, 175–76, 574 P.2d 1199 (1978). Accordingly, this factual dispute was appropriately left to the jury and the jury was properly instructed on that issue.

### DR. SKOGLUND'S TESTIMONY

Over Peters' objection, Dr. Ballard's counsel was permitted to elicit from his expert witness, Dr. Skoglund, the following testimony:

Q. Who is Dr. Sherry?
A. Dr. Sherry is a fellow specialist in internal medicine who covers for me on weekends in rotation.

. . . .

Q. When Dr. Sherry covers for you when you are gone, do you consider yourself responsible for his independent decisions?
A. No.

Report of Proceedings 9, at 155–56.

Peters objected on the grounds of relevance. The court indicated it would overrule the objection "at this point". Report of Proceedings 9, at 156. Peters now argues on appeal that the court abused its discretion in admitting the testimony since Dr. Skoglund's personal opinion of his own situation was not relevant to any issue in her case and the testimony was unfairly prejudicial because it implied that the acts or omissions of Dr. Evans were not the responsibility of Dr. Ballard.

■■ We are inclined to agree that an adequate foundation for Dr. Skoglund's testimony on this issue was not laid. However, in light of the testimony of Drs. Evans and Ballard on this issue, Dr. Skoglund's comment is merely cumulative and does not require reversal. *See Boeing Co. v. State,* 89 Wn.2d 443, 452, 572 P.2d 8 (1978). Since Peters failed to object at trial to the prejudicial nature of the testimony, we need not address that issue on appeal. *See Herberg v. Swartz,* 89 Wn.2d 916, 925, 578 P.2d 17 (1978) (appellate courts will not review issue, theory or argument not presented at trial).

Affirm.

SCHOLFIELD and FORREST, JJ., concur.

Reconsideration denied August 22, 1990.

Review denied at 115 Wn.2d 1032 (1990).