**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| LINDA YEAGER, an unmarried woman, | No. 48189-8-II |
| Appellant, | |
| v. | |
| JOHN O'KEEFE and "JANE DOE" O'KEEFE, and the marital community composed thereof, | UNPUBLISHED OPINION |
| Respondents, | |

Linda Yeager appeals from a civil judgment and argues that the trial court erred by denying the admission of a doctor's deposition testimony. We affirm.

FACTS

In January 2011, Linda Yeager and John O'Keefe were involved in a two-vehicle car collision. While stopped in a left turn lane, O'Keefe rear-ended Yeager. Yeager did not seek emergency treatment and drove home. Approximately two weeks after the collision, Yeager sought medical care. Her chief complaints involved pain in her finger, foot, and elbow which radiated into her shoulder, neck, and back.

Three years later, Yeager sued O'Keefe. O'Keefe admitted liability for causing the collision, but denied the nature and extent of Yeager's injury and damages.

In June 2015, Yeager filed a supplemental disclosure of primary witnesses which identified Dr. Eyal Kedar as a medical professional and Yeager's current rheumatologist. The disclosure stated that Kedar "may testify at trial and offer opinions as to [Yeager's] collision related injuries."

Clerk's Papers (CP) at 20. Kedar, a physician from Virginia Mason Medical Center, became Yeager's treating physician in November 2013. Yeager's previous doctor, also from Virginia Mason, diagnosed her with diffuse pain syndrome consistent with fibromyalgia.

In August, O'Keefe took a discovery deposition of Kedar. Yeager also examined Kedar. During the deposition, Kedar indicated that when he first saw Yeager in November 2013, the visit related to the car accident. Kedar stated that his opinions were limited to Yeager's fibromyalgia diagnosis. He opined that it was "possible that her fibromyalgia may have been worsened by the car accident, or even potentially brought on." Supplemental (Supp.) CP at 170. Kedar could not say with a reasonable degree of medical certainty whether the car accident caused or aggravated Yeager's fibromyalgia.

Kedar further opined that if Yeager had fibromyalgia at the time of the accident, there was a "good chance" the accident worsened it. Supp. CP at 178. Kedar had no knowledge of Yeager's condition before or at the time of the car accident, other than what Yeager's attorney told him regarding undiagnosed numbness and tingling. He stated that he would need more information about Yeager's fibromyalgia before he could testify at trial. Four days after the deposition, Yeager filed a notice of intent to offer Kedar's testimony by deposition pursuant to CR 32(a)(5), followed by a designation of Kedar's deposition excerpts.

Trial began and on its second day, the court heard argument from the parties regarding the admissibility of Kedar's deposition. Yeager argued that it should be admitted pursuant to both CR 32(a)(5) and CR 32(a)(3)(B). O'Keefe argued that neither applied.

The trial court noted that Yeager had changed her position: Yeager now wanted to introduce Kedar's deposition under CR 32(a)(3) which she did not previously cite in her notice of intent. The court ruled that it would not allow Kedar's deposition testimony. It reasoned that

Yeager had the obligation to secure the attendance of her expert witness and that CR 32(a)(5) did not apply.

On the same day, Dr. Samuel Coor testified as Yeager's expert witness. He reviewed Yeager's medical records which included records from Virginia Mason. Based on this review, he opined about the injuries related to the car accident. Coor did not testify as to Yeager's fibromyalgia, nor did Yeager question Coor about the fibromyalgia.

On the third day of trial, Yeager filed a written motion to allow Kedar's deposition and requested that the court allow her to read excerpts from the deposition at trial "pursuant to CR 32(a)(3)(B)." CP at 105. In support of her motion, she submitted Kedar's declaration which stated that he was Yeager's treating physician, he resided more than 20 miles from the jurisdiction of the proceedings, and he was not available to appear in person to testify at trial due to his patient schedule. Yeager argued that Kedar was "not a retained expert" and excluding his testimony would be highly prejudicial to her case. CP at 107.

Yeager also argued that pursuant to *Kimball v. Otis Elevator Co.*, 89 Wn. App. 169, 947 P.2d 1275 (1997), professionals who acquire facts and opinions not in anticipation of litigation but from other involvement, were not considered experts but fact witnesses. Because Kedar was not an expert whose opinion was formulated in anticipation of litigation, Yeager argued for the admission of Kedar's deposition under CR 32(a)(3)(B).

O'Keefe distinguished *Kimball* factually, arguing that Kedar's proffered testimony involved an opinion on medical causation of injuries from the car accident, not simply factual testimony. The trial court agreed with O'Keefe and found Kedar to be an expert witness. It clarified that Kedar could testify in-person. Kedar resided in the State and was subject to a

3

subpoena. Yeager should have made timely arrangements to secure Kedar if she wanted him to testify.

On the last day of trial, Yeager again moved to admit Kedar's deposition transcript. She argued that because Kedar was a treating physician and his testimony was consistent with the information in her medical records, Kedar was a witness who fell under CR 32(a)(3). Specifically, Yeager argued:

> [Kedar's] testimony . . . is not anything going outside the scope of what was documented in the medical records, which specifically is, it does appear that she developed diffuse pain syndrome following the motor vehicle accident is consistent with fibromyalgia . . . the same comment that was read by [O'Keefe's expert] yesterday, in that they found that she was having fibromyalgia related to the motor vehicle collision. And that is documented in these medical records.

4 Report of Proceedings (RP) at 628-69. The court denied the motion.

At the close of trial, the jury awarded Yeager $2,306.40 in damages for past medical expenses and non-economic damages. Yeager appeals.

ANALYSIS

Yeager argues that the trial court erred in applying CR 32(a)(3)(B) which allows the use of a witness' deposition if the witness resides outside of the county more than 20 miles from the place of trial, and if the witness' absence from trial is not procured by the party offering the deposition. She argues that from a plain reading, the rule applies to any such witness with the exception of the opposing party's out-of-state expert witness whose opinion is acquired in anticipation of litigation.[1] She argues that CR 32(a)(5), which allows the use of an expert witness' deposition, is not the only means of admitting an expert's deposition. We disagree and conclude that CR

---

[1] CR 26(b)(5) states, in relevant part: "Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subsection (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained."

4

32(a)(3)(B) applies to lay witnesses and fact witnesses, not CR 26(b)(5) experts, and the trial court did not err by applying CR 32(a)(5) to Kedar's deposition testimony.

I.      STANDARDS OF REVIEW

We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *Hendrickson v. King County*, 101 Wn. App. 258, 265, 2 P.3d 1006 (2000). We, therefore, review a trial court's decision to deny admission of a deposition under CR 32 for an abuse of discretion. *Sutton v. Shufelberger*, 31 Wn. App. 579, 585, 643 P.2d 920 (1982); *In re Estate of Foster*, 55 Wn. App. 545, 548, 779 P.2d 272 (1989). We overturn the trial court's ruling on the admissibility of evidence if its decision was manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 728, 315 P.3d 1143 (2013).

Interpretation of court rules are questions of law we review de novo. *Cascade Floral Prod., Inc. v. Dep't of Labor & Indust.*, 142 Wn. App. 613, 618, 177 P.3d 124 (2008). Court rules are interpreted in the same manner as statutes. *Jafar v. Webb*, 177 Wn.2d 520, 526, 303 P.3d 1042 (2013). If the rule's meaning is plain on its face, we give effect to that meaning as an expression of the drafter's intent. *Jafar*, 177 Wn.2d at 526. If the rule is "'susceptible to two or more reasonable interpretations,' it is ambiguous". *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 305, 268 P.3d 892 (2011) (quoting *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005)). If a rule is ambiguous, we may look to the drafter's intent by "'reading the rule as a whole, harmonizing its provisions, and using related rules to help identify the legislative intent embodied in the rule.'" *Jafar*, 177 Wn.2d at 526-27 (quoting *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007)).

II.     APPLICATION OF CR 32(a)(3)(B)

The use of a witness' deposition at trial is governed by CR 32(a), which provides:

[A]ny part or all of a deposition, so far as admissible under the Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

. . . .

*(3)* The deposition of a *witness*, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or *(B)* that the witness resides out of the county and more than 20 miles from the place of trial, unless it appears that the absence of the witness was procured by the party offering the deposition or unless the witness is an out-of-state expert subject to subsection (a)(5)(A) of this rule[.]

. . . .

*(5)* The deposition of an *expert witness* may be used as follows:

*(A)* The discovery deposition of an opposing party's rule 26(b)(5) expert witness, who resides outside the state of Washington, may be used if reasonable notice before the trial date is provided to all parties and any party against whom the deposition is intended to be used is given a reasonable opportunity to depose the expert again.

*(B)* The deposition of a health care professional, even though available to testify at trial, taken with the expressly stated purpose of preserving the deponent's testimony for trial, may be used[.]

(Emphasis added).

Expert testimony, "in the form of an opinion or otherwise," is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," and the witness is "qualified as an expert by knowledge, skill, experience, training, or education." ER 702. Whether a person qualifies as an expert witness is left to the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *In re Detention of A.S.*, 138 Wn.2d 898, 917, 982 P.2d 1156 (1999).

Expert medical testimony is necessary to establish causation where the nature of the injury involves medical factors which are beyond a lay person's knowledge, necessitating speculation in making a finding. *Fabrique v. Choice Hotels Int'l, Inc.*, 144 Wn. App. 675, 685, 183 P.3d 1118 (2008). Medical testimony as to a causal relationship between the negligent act and the subsequent condition complained of must demonstrate that the injury "'probably'" or "'more likely than not'" caused the subsequent condition, rather than the accident or injury "'possibly'" caused the subsequent condition. *Fabrique*, 144 Wn. App. at 687 (quoting *Ugolini v. States Marine Lines,* 71 Wn.2d 404, 407, 429 P.2d 213 (1967)). The expert medical testimony must also be based upon a reasonable degree of medical certainty. *Fabrique*, 144 Wn. App. at 687-88.

In interpreting CR 32(a), we conclude that the meaning of the rule is plain on its face. The proffered deposition is that of an expert medical witness. Kedar, a medical doctor, provided an opinion that Yeager's fibromyalgia "may have been worsened" or "even potentially brought on" by the car accident.[2] Supp. CP at 170. Even if we concluded that the rule is ambiguous, the drafter's intent demonstrates that subsection (a)(5) was added to apply different requirements to expert witnesses, as opposed to lay or fact witnesses.

CR 32 was amended in 1993 to create subsection (a)(5) provisions pertaining to expert witness depositions. 3A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 32 at 757 (6th ed. 2013). The drafters' intent was twofold: (1) to eliminate a trap that arises when a party conducts a discovery deposition on their opponent's out-of-state expert only to learn later that the expert based their conclusions on faulty information that could affect their credibility, and if the deposition is presented at trial, the deposing party is effectively prevented from cross-

---

[2] The parties do not argue whether Kedar's testimony would have been inadmissible because it did not meet the "reasonable degree of medical certainty" standard required for expert medical causation opinions. Because the parties do not argue it, we do not decide the issue.

examining the expert; and (2) to mitigate the high expense associated with presenting the testimony of a health care professional at trial. 3A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 32 author's cmts. at 757-58 (6th ed. 2013).

At trial, Yeager, relying on *Kimball*, argued that because Kedar was a treating physician, his deposition was admissible under CR 32(a)(3). In *Kimball*, the plaintiff sought to exclude a physician's testimony on the basis that she did not receive notification that the defendant took the deposition to preserve the testimony for trial. 89 Wn. App. at 174. The testimony went solely to the issue of damages; however, the jury found no liability existed. *Kimball*, 89 Wn. App. at 175. Nevertheless, the court addressed the merits of the argument at the request of the parties. *Kimball*, 89 Wn. App. at 175.

It noted that the critical question was whether the physician was an "expert witness." *Kimball*, 89 Wn. App. at 175. *Kimball* stated that under CR 26(b), only opinions acquired and developed in anticipation of litigation constituted expert opinions; "professionals who have acquired facts and opinions not in anticipation of litigation, but from some other involvement, are not expert witnesses." *Kimball*, 89 Wn. App. at 175.[3] Because neither party hired the physician who merely reviewed the plaintiff's medical records and examined her for the purposes of an L&I claim well before she sued the defendant for damages, the court concluded that the physician was

---

[3] *Kimball* cites to *Baird v. Larson*, 59 Wn. App. 715, 719-20, 801 P.2d 247 (1990), and *Peters v. Ballard*, 58 Wn. App. 921, 930, 795 P.2d 1158 (1990). In *Baird*, the court addressed expert witness fees, holding that under CR 26(b)(4)(C), "only opinions acquired and developed in anticipation of litigation are expert opinions." 59 Wn. App. at 719. It held that an expert person is not necessarily an expert witness – "[p]rofessionals who have acquired or developed facts and opinions not in anticipation of litigation but from involvement as an actor in a transaction, are not entitled to expert witness fees." *Baird*, 59 Wn. App. at 720. In *Peters*, the court held that because the physician's knowledge and opinions were derived from his role as the plaintiff's subsequent treating physician, and not in anticipation of litigation or trial, the physician was to "be treated as any other witness." 58 Wn. App. at 930.

not an expert witness, and the trial court did not abuse its discretion in admitting the physician's deposition under CR 32(a)(3). *Kimball*, 89 Wn. App. 175-76.

Here, the trial court heard arguments from the parties and seemed to acknowledge that, based on *Kimball*, certain expert deposition testimony may be admissible under CR 32(a)(3)(B). The court, however, distinguished the facts in *Kimball* from this case. Unlike the doctor in *Kimball*, Kedar's proffered testimony related to the claim at issue, and his opinion was that Yeager's fibromyalgia was caused by the car accident. Yeager agreed with the court's characterization of Kedar's deposition testimony.

During his deposition, Kedar testified that Yeager's fibromyalgia was possibly caused or aggravated by the car accident, but he could not express an opinion to a reasonable degree of medical certainty. He also testified that Yeager's initial visit with him related to the car accident. Yeager described Kedar as her treating physician, not a retained expert; however, the elicited testimony clearly showed Kedar provided a causation opinion specifically relating an injury or condition caused by the car accident. Given that Kedar provided an opinion on causation, and expert medical testimony is required to establish causation of injury, the trial court did not abuse its discretion in finding that Kedar was an expert witness.

Because the trial court found Kedar to be an expert witness, it properly applied CR 32(a)(5) to the admissibility of Kedar's deposition transcript. We, therefore, conclude that the trial court did not abuse its discretion by refusing to apply CR 32(a)(3) to Kedar's deposition testimony.[4]

---

[4] Yeager seems to ask us to conclude that an expert's deposition may be admitted under either CR 32(a)(3) or CR 32(a)(5), depending on what testimony the expert offers. It is clear from the record that Kedar's testimony constituted an expert opinion which attempted to link Yeager's fibromyalgia to the car accident. There is no authority on point which supports Yeager's argument on this basis.

III.     APPLICATION OF CR 32(a)(5)

In the alternative, Yeager argues that if CR 32(a)(5) is the sole mechanism to introduce expert deposition testimony, the trial court still erred because Kedar, an expert, was a treating physician and not a CR 26(b)(5) expert retained in anticipation of litigation. She seems to argue that CR 32(a)(5) applies only to experts whose opinions are acquired in anticipation of litigation or trial; because the court did not find Kedar to be a retained expert, it erroneously excluded his deposition testimony.[5] We disagree and conclude that the court did not err by treating Kedar as an expert witness and applying CR 32(a)(5). CR 26 is a general rule governing discovery. The use of depositions in court is governed by CR 32.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702. One of the ways a witness is considered an expert witness is if the facts or opinions possessed by the expert were obtained for the specific purposes of preparing for litigation. *See Peters v. Ballard*, 58 Wn. App. 921, 927-30, 795 P.2d 1158 (1990); CR 26(b)(5). The mere designation by a party alone is not controlling. *See Peters*, 58 Wn. App. at 930.

Based on the discussion above, CR 32(a)(5) applies to depositions of CR 26(b)(5) expert witnesses. In her supplemental disclosure of primary witnesses, Yeager identified Kedar as a "medical profession[al]" who may offer opinions as to Yeager's accident-related injuries. CP at 19. Although Yeager argues that Kedar was not a retained expert, the facts show that she intended

---

[5] Yeager argues that the trial court did not find that Kedar was a CR 26(b)(5) expert. While the court did not make a specific finding that Kedar was a CR 26(b)(5) expert, it implied that Kedar was a true expert because he was offering a causation opinion regarding the fibromyalgia in relation to the car accident.

to use Kedar's deposition testimony to establish that the car accident caused or aggravated her fibromyalgia. Given that the lawsuit pertained to the extent of injuries received from the car accident, and Kedar's opinion related Yeager's fibromyalgia to the accident at issue, the trial court found Kedar to be an expert for purposes of CR 32 based on tenable grounds. As discussed above, the facts show the trial court did not abuse its discretion in finding Kedar was an expert witness.[6] We, therefore, conclude that the trial court did not err by treating Kedar as a true expert and did not abuse its discretion by applying CR 32(a)(5).

IV.     HARMLESS ERROR

O'Keefe argues that even if the trial court erred in analyzing CR 32(a), the error was harmless because Kedar's testimony was cumulative of Coor's testimony, the same evidence was admitted through medical records, and Yeager had the opportunity to elicit the information from Kedar's deposition transcript through Coor, but failed to do so. Yeager contends that the error was not harmless because her fibromyalgia was a critical medical issue in this case and Kedar's causation opinion did not appear elsewhere in the record. We disagree with Yeager and conclude that even if the trial court erred, the error was harmless.

"When a trial court makes an erroneous evidentiary ruling, the question on appeal becomes 'whether the error was prejudicial, for error without prejudice is not grounds for reversal.'" *Mut. of Enumclaw*, 178 Wn. App. at 728-29 (quoting *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983)). An error is harmless and not prejudicial unless it affects the outcome of the case. *Mut. of Enumclaw*, 178 Wn. App. at 729. Improper exclusion of

---

[6] Neither party contests that Kedar was an expert or a professional. Yeager argues he was not an expert witness whose opinion was acquired for purposes of litigation. Yeager seems to focus on the fact that Kedar was never "retained" and that because he was a "treating physician," he should be treated as a lay or fact witness whose deposition should be admitted under CR 32(a)(3).

evidence constitutes harmless error if the evidence is cumulative or has speculative probative value. *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 169-70, 876 P.2d 435 (1994). Reversal is required if it is reasonable to conclude that the trial outcome would have been materially affected had the error not occurred. *Lutz Tile, Inc. v. Krech*, 136 Wn. App. 899, 905, 151 P.3d 219 (2007).

Yeager's fibromyalgia diagnosis was admitted into evidence through her medical records and Coor testified that he reviewed the medical records in forming his opinions. During his deposition, Kedar testified that his opinions were limited to Yeager's fibromyalgia and Yeager acknowledged that his testimony was "consistent with what is in [Yeager's] medical records" and "is not anything going outside the scope of what was documented in the medical records." 4 RP at 628. In this regard, excluding Kedar's testimony was harmless because it was cumulative to the evidence introduced at trial.

Additionally, Kedar could not state, with a reasonable degree of medical certainty, that Yeager's fibromyalgia was caused or aggravated by the car accident. *See Fabrique*, 144 Wn. App. at 688. He stated that he needed additional information before he could testify at trial. Yeager characterizes Kedar's testimony as a causation opinion regarding her fibromyalgia, but such opinions require expert medical testimony that is based upon a reasonable degree of medical certainty.[7] *Fabrique*, 144 Wn. App. at 688. Kedar's opinion would have had speculative probative value because it could not meet the necessary standard for medical causation opinions.

Yeager has not presented evidence showing that, had she been permitted to present Kedar's deposition testimony, the outcome of her trial would have been materially different. Because Kedar's testimony was cumulative of the evidence admitted at trial, and his causation opinion

---

[7] In this regard, Yeager seems to characterize Kedar as an expert giving expert testimony on the causation of her injuries at issue.

would have been inadmissible, we conclude that even if the trial court erred in applying CR 32(a)(5), the error was harmless.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, J.

Bjorgen, C.J.