INFECTIOUS DISEASE OF INDIANAPOLIS, P.S.C., and Douglas H. Webb, M.D., Appellants–Defendants,

v.

Ruth TONEY, Appellee–Plaintiff.

No. 49A05–0402–CV–80.

Court of Appeals of Indiana.

Aug. 27, 2004.

Nana Quay–Smith, Daniel R. Fagan, Kelly R. Eskew, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellants.

Kevin Charles Murray, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, John P. Gulyas, Indiana Department of Insurance, Indianapolis, IN, Attorneys for Amicus Curiae.

Mary J. Hoeller, Indianapolis, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Infectious Disease of Indianapolis, P.S.C. and Douglas H. Webb, M.D. (collectively, "Dr. Webb") bring this discretionary interlocutory appeal challenging the denial of Dr. Webb's fourth motion for summary judgment in a medical malpractice suit filed by Ruth Toney. Dr. Webb claims that because Toney has received her full measure of damages from another health care provider and from the Indiana Patient's Compensation Fund ("the Fund"), she is collaterally estopped from collecting additional damages from him. We agree. However, we affirm the trial court's denial of Dr. Webb's summary judgment motion because Toney has not been permitted the opportunity to establish Dr. Webb's liability and, therefore, collateral estoppel does not preclude her from pursuing her claim against him for medical malpractice—albeit knowing that she cannot recover damages from him—if she so desires.

### Facts and Procedural History

■■■■ We are no stranger to the facts at hand as this is the second time that this case is before this panel on interlocutory appeal. *See Infectious Disease of Indianapolis, P.S.C. v. Toney*, 771 N.E.2d 1224 (Ind.Ct.App.2002), *trans. denied.* In our previous opinion, we presented the facts as follows:

In January of 1995, Toney underwent spinal fusion surgery at Orthopaedics Indianapolis, Inc. ("Orthopaedics"). She developed a post-operative wound infection, which Orthopaedics treated. The infection worsened, necessitating emergency debridement surgery. In February of 1995, Dr. Douglas H. Webb [of Infectious Disease of Indianapolis, P.S.C ("Infectious Disease") ] became involved in the case, prescribing what Toney terms "toxic antibiotics which are well known in the medical community to damage the kidneys and nerves of the ear, if not monitored and administered properly." Appellant's App. p. [27].[1]

---

1. We have replaced the page numbers in the Appendix citations in our previous opinion

Toney allegedly was harmed by the improper administration of those antibiotics.

Toney filed a proposed complaint against Orthopaedics and Dr. Webb with the Indiana Department of Insurance.... In a June 1999 report, the Medical Review Panel rendered its opinion, which provides in part:

The evidence does not support the conclusion that defendants, Infectious Disease of Indianapolis [and] Douglas H. Webb, M.D. ... failed to meet the applicable standard of care as charged in the complaint.

The evidence supports the conclusion that the defendant, Orthopaedics Indianapolis, failed to meet the applicable standard of care as charged in the complaint. The conduct complained of was a factor of the resultant damages.

Appellant's App. p. [29–30, 158–59].

On September 1, 1999, Toney commenced this action against Orthopaedics and Dr. Webb in Marion Superior Court, Civil Division, Room 13. In her complaint, she averred that [Orthopaedics'] negligence in treating her wound infection necessitated another surgery and intravenous antibiotics. Relevant damages included "medical expenses for additional debridement surgery and hospitalization, lost wages, inner ear nerve damage, complete disability and pain and suffering." Appellant's App. p. [27]. Toney also alleged that Dr. Webb negli-

gently treated her wound infection, with damages including "medical expenses for treatment of her kidney and inner ear nerve damage, lost wages, permanent inner ear nerve damage, complete disability and pain and suffering." Appellant's App. p. [28].

Orthopaedics agreed to pay Toney $100,000 on a structured basis, the equivalent of its insurance policy limit, and was dismissed from this suit. *See* Ind.Code § 27–12–15–3.[2] Toney then proceeded against the Patient's Compensation Fund by filing her petition for additional damages in Marion Superior Court, Civil Division, Room 6. The IDI moved to consolidate the litigation. Toney opposed consolidation, and her petition for additional damages proceeded separately.

After hearing evidence, the Honorable Thomas J. Carroll of Court 6 determined that, as a consequence of [Orthopaedics'] malpractice, Toney suffered a permanent scar in the lumbar area of her lower back, a permanent ear injury affecting her balance, loss of earnings, and pain and suffering. In his order dated December 11, 2000, Judge Carroll determined the total damages to be $725,000. Given that Toney had received the equivalent of $100,000, the court entered judgment against the Patient's Compensation Fund for $625,000.

Later that month, on December 27, 2000, Dr. Webb filed his third motion for summary judgment.[3] In his accompa-

with the page numbers of where the cited information can be found in the Appendix filed with the instant appeal.

**2.** In 1998, the General Assembly recodified the Medical Malpractice Act. The statute, as amended, is currently found at Indiana Code § 34–18–15–3.

**3.** Dr. Webb withdrew his first motion for summary judgment filed after the medical re-

view panel issued its report. The trial court ruled in favor of Dr. Webb on the second summary judgment motion but granted Toney's motion to correct error, effectively denying relief. We note that the third motion is captioned, "Douglas Webb, M.D.'s Third Motion for Summary Judgment[";] however, Infectious Disease participates in this appeal. *See* Ind. Appellate Rule 17(A) ("A party of

nying memorandum, Dr. Webb claimed that Toney is collaterally estopped from asserting that her total damages exceed $725,000. Toney responded on January 16, 2001. Following a hearing, the trial court denied Dr. Webb's motion. Upon Dr. Webb's request, the court certified its interlocutory order and further "certified" the following issue for resolution:

> Whether, in a medical malpractice action brought pursuant to the Indiana Medical Malpractice Act involving multiple defendants, a plaintiff which settles her claim against one defendant and proceeds to trial against the Indiana Patient['s] Compensation Fund is then collaterally estopped from arguing in a subsequent and separate case against ... [another] defendant that her total damages exceed what has been judicially determined as plaintiff's total damages in the action against the Patient's Compensation Fund. And, if the plaintiff has recovered her total judicially determined damages from her claim against the settling defendant and the Patient's Compensation Fund, is she then collaterally estopped from arguing that her damages have not been fully satisfied?

Appellant's App. p. [131].[4] Over Toney's objection, this court accepted jurisdiction of the appeal. We also granted [the Indiana Department of Insurance's] petition to file an amicus curiae brief. *Id.* at 1226–27. Because a transcript of the excess damages hearing before Judge Carroll was absent from the record, we could not determine whether Toney had received compensation for all of her injuries stemming from the alleged malpractice of Orthopaedics and Dr. Webb. Thus, we affirmed the trial court's order denying Dr. Webb's third motion for summary judgment. *Id.* at 1229–30.

Dr. Webb has since filed a fourth motion for summary judgment. Among the exhibits Dr. Webb attached to his fourth motion were the Partial Transcript of Evidence of the excess damages hearing before Judge Carroll and an Affidavit of Mary J. Hoeller, Toney's attorney. During direct examination of Toney at the excess damages hearing, the following exchange occurred:

Q: Okay. I'd like now to talk about your physical injuries. What injuries are you asking Judge Carroll to award you damages for?

A: Well, I've suffered two (2) injuries. One was the infection itself—the need for subsequent surgery for that. The second was the toxicity incident[.]

Appellant's App. p. 177–78. In Attorney Hoeller's affidavit, she stated: "Because the Fund's position is that Toney had one injury and because it would not settle, we had to put on *all evidence of all Toney's injuries at trial before Judge Carroll.* The Fund did not object to any of our evidence or make any attempt to refute it." Appellant's App. p. 256 (emphasis supplied). The trial court subsequently denied Dr. Webb's fourth motion for summary judgment. Dr. Webb now appeals. The Indiana Department of Insurance, the

record in the trial court ... shall be a party on appeal.").

4. As a technical matter, certification of the order, not the question, is proper. *Budden v. Bd. of Sch. Comm'rs of Indianapolis,* 698 N.E.2d 1157, 1165 n. 14 (Ind.1998); *see* Ind. Appellate Rule 14(B). Nevertheless, there is nothing prohibiting the trial court from identifying the specific question of law presented by its order. This court, however, is under no obligation to accept the issue as framed by the trial court or to answer it. [*Budden,* 698 N.E.2d] at 1166 n. 14.

agency charged with administering the Fund, filed an *Amicus Curiae* brief in support of Dr. Webb's position that Toney has been fully compensated for her injuries and should not be allowed to recover twice for the same injury.

### Discussion and Decision

Dr. Webb contends that the trial court erred in denying his motion for summary judgment. Summary judgment is appropriate when the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Infectious Disease*, 771 N.E.2d at 1227; Ind. Trial Rule 56(C). Under Indiana summary judgment procedure, a movant must designate sufficient evidence to foreclose the nonmovant's reasonable inferences and eliminate any genuine factual issues. *Infectious Disease*, 771 N.E.2d at 1227. Once the movant has done so, the burden shifts to the nonmovant to make a showing sufficient to establish the existence of a genuine issue for trial on each challenged element of the cause of action. *Id.*

The party appealing the denial of summary judgment has the burden of persuading this Court that the trial court erred. *Id.* When reviewing the denial of a motion for summary judgment, we apply the same standard as the trial court. *Id.* Any doubt as to fact or inference to be drawn from the evidence is resolved in favor of the nonmovant. *Id.* at 1227–28.

 The central disputed issue in this case is whether collateral estoppel applies. Collateral estoppel, also known as "issue preclusion," bars the subsequent re-litigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in the subsequent suit. *Id.* at 1228 (citing *Small v. Centocor, Inc.*,

731 N.E.2d 22, 28 (Ind.Ct.App.2000), *reh'g denied, trans. denied* ). In that situation, the first adjudication is held conclusive even if the second action is on a different claim. *Id.*

 In order to bar re-litigation of an issue, collateral estoppel requires: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of issues; and (3) the party to be estopped was a party or the privity of a party in the prior action. *Id.* In determining whether the use of collateral estoppel is appropriate, the court must consider whether the party against whom the judgment is pled has had a full and fair opportunity to litigate the issue and whether, under the circumstances, it would be otherwise unfair to permit the use of collateral estoppel. *Id.* (citing *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993)); *see also Sims v. Scopelitis*, 797 N.E.2d 348, 351 (Ind.Ct.App.2003).

In our previous opinion in this case, we determined that there was a final judgment on the merits in a court of competent jurisdiction and that the party to be estopped—Toney—was a party in the prior action. *Infectious Disease*, 771 N.E.2d at 1228. Because of a dearth of evidence, we left open the question of whether there was an identity of issues. *Id.* at 1229. Following the issuance of our opinion, Dr. Webb gathered more evidence and filed another motion for summary judgment. In light of this additional evidence, we are asked today to determine whether there is an identity of issues, making the doctrine of collateral estoppel applicable and therefore the denial of Dr. Webb's fourth motion for summary judgment erroneous.

 After Toney settled her claim with Orthopaedics, she then attempted to settle

with the Fund.[5] Settlement negotiations broke down after Toney realized that settlement with the Fund was conditioned upon her signing a release, which would have prevented her from pursuing any further litigation for her pending claims of alleged malpractice against Dr. Webb. Before establishing Dr. Webb's liability, Toney then filed a petition for excess damages with the Fund. Alternatively, Toney could have waited for a determination of liability against Dr. Webb before petitioning the Fund for excess damages. Assuming *arguendo* that Dr. Webb—in addition to Orthopaedics—was found to have committed medical malpractice and to have caused a separate and distinct injury,[6] then Toney would have been able to petition the Fund for excess damages for an amount up to $1.5 million, as well as seek health care provider payments from both Orthopaedics and Dr. Webb. *See, e.g., Miller v. Mem'l Hosp. of South Bend, Inc.,* 679 N.E.2d 1329, 1332 (Ind.1997) ("[I]f there are two separate and distinct injuries caused by two separate occurrences of malpractice, the statute does not preclude two separate recoveries (each separately limited in accordance with the [Medical Malpractice] Act)."); *Med. Assurance of Ind. v. McCarty,* 808 N.E.2d 737, 746 (Ind. Ct.App.2004) ("[I]f there are two distinct acts [of medical malpractice] and two distinct injuries, there can be two 'occurrences' and health care provider payments."). This is not what happened.[7]

Instead, Toney decided to go forward and petition the Fund. Because there was a liability determination on only one of two alleged acts of medical malpractice committed against her, Toney was only entitled to seek excess damages up to $650,000.[8] This is precisely what she did.

At the hearing for excess damages, Toney presented evidence on all her injuries. *See* Appellant's App. p. 256 (conceding that "all evidence on all Toney's injuries" was presented to Judge Carroll); Appellee's Br. p. 7 ("Even though Toney's evidence supported all her injuries...."). Specifically, after testifying she suffered two injuries, the infection that required surgery and the "toxicity incident," Appellant's App. p. 178, Toney testified briefly about the infection, surgery, and resultant scarring and pain. Then, Toney testified at

5. After a plaintiff has recovered from a qualified health care provider under the Medical Malpractice Act, the plaintiff may then petition the Fund to recover any amount of damages to which the plaintiff is entitled over the statutorily determined health care provider's share—at the time of Toney's injuries, $100,000 per act of malpractice—up to the applicable statutory cap for medical malpractice damages. *See* Ind.Code § 34–18–15–3. The amount the plaintiff petitions the Fund for is commonly referred to as "excess damages."

6. We note that there remains a factual issue of whether there exists separate and distinct injuries. That issue, however, is not squarely before us; thus, we need not reach that issue other than to say that if a patient can prove more than one act of malpractice and separate and distinct injuries, then that patient is entitled to separate recoveries, each separately limited in accordance with the Medical Malpractice Act. *Miller v. Mem'l Hosp. of South Bend, Inc.,* 679 N.E.2d 1329, 1332 (Ind. 1997).

7. We recognize that Toney suffered a debilitating injury, which impaired her ability to work and care for her home. In such a situation, it is understandable that she would not wish to delay in seeking at least some compensation for her injuries until she resolved her claim against Dr. Webb, which could take years.

8. We arrive at the $650,000 excess damages figure by subtracting the $100,000 Toney received when she settled her claim with Orthopaedics from the $750,000 cap on medical malpractice damages applicable to Toney's claim.

great length about the toxicity incident and complications arising therefrom.

Nonetheless, Toney argues, "Judge Carroll could not award Toney anything for the negligent acts of [Dr. Webb] because [Dr. Webb's] act of malpractice was not in issue.... Judge Carroll was obliged to determine excess damages against [the Fund] for the negligence of Orthopaedics only." Appellant's Br. p. 7. Toney is correct that Dr. Webb's malpractice was not at issue and that Judge Carroll was determining excess damages only for the negligence of Orthopaedics. However, she fails to acknowledge that all of the injuries allegedly caused by Dr. Webb's alleged malpractice were also attributable to the negligence of Orthopaedics.

■■■ Indiana has long followed § 457 of the Restatement (Second) of Torts, which provides:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

*See Edwards v. Sisler,* 691 N.E.2d 1252, 1254 (Ind.Ct.App.1998). Thus, the original tortfeasor is responsible for all the damages flowing from his negligence, even if some of those damages are attributable to malpractice in the treatment of the original injury. Although we have yet to explicitly apply this rule in a case where the original tortfeasor was a health care pro-

vider, we see no reason why the rule should not apply to health care providers whose original negligence causes the intervention of a second physician who then negligently treats the injury caused by the first health care provider. *See Carter v. Shirley,* 21 Mass.App.Ct. 503, 488 N.E.2d 16, 20 (1986) (concluding § 457 is no less applicable to "physicians whose original negligence causes the intervention of a second physician who either improperly diagnoses the case and performs an unnecessary operation or makes a proper diagnosis and performs a necessary operation negligently"), *review denied. See also Daly v. United States,* 946 F.2d 1467, 1471 (9th Cir.1991) (stating § 457 applies to successive malpractice when subsequent treatment is undertaken to mitigate harm inflicted by prior physician); *Rine v. Irisari,* 187 W.Va. 550, 420 S.E.2d 541, 544 (1992) (same); *Lindquist v. Dengel,* 92 Wash.2d 257, 595 P.2d 934, 937 (1979) (finding 457 does not carve out a special exception for physicians and that a physician could not "avoid liability for the harm caused by treatment from other physicians if his own negligence was the cause of the injury which necessitated that treatment.").[9]

■■■ That being said, we stand by our previous determination that "a party may be compensated only once for her just damages.... Thus, if an injured party receives full satisfaction for all injuries from the original tortfeasor, that party would be denied any recovery in an action against the successor tortfeasor." *Infec-*

---

**9.** To the extent that Toney argues that we do not know what injuries Judge Carroll intended to be covered by his damages award, we note that it is reasonable to infer that the $725,000 damages assessment included the injuries attributable to the negligence of both Orthopaedics and Dr. Webb in light of the foregoing case law; the fact that Toney presented evidence on all of her injuries in-

cluding kidney dysfunction and inner ear damage, which were alleged to be caused by antibiotics prescribed by Dr. Webb; and—most importantly—Judge Carroll's specific finding regarding Toney's inner ear injury and delineation of the $725,000 award as Toney's "total" damages. Appellant's App. p. 161.

*tious Disease*, 771 N.E.2d at 1230. After Toney presented evidence on all her injuries—which was appropriate given that an original tortfeasor is responsible for all the damages flowing from his negligence, even when the original tortfeasor is a health care provider—Judge Carroll determined that Toney's total damages amounted to $725,000. This is $25,000 less than the $750,000 Judge Carroll could have awarded under the applicable medical malpractice cap. Toney failed to perfect an appeal of Judge Carroll's determination of her excess damages. By not appealing Judge Carroll's determination, Toney waived her entitlement to any further damages stemming from the injuries she presented evidence of to Judge Carroll, which she concedes were all her injuries. Having established that Toney has recovered her full measure of damages—or has waived her entitlement to any further damages by failing to appeal Judge Carroll's award—it would be unjust to allow her to seek additional compensation from Dr. Webb. We note that this would not necessarily have been the case had Judge Carroll awarded damages in an amount equal to the statutory cap. This is so because there would then exist the possibility that Toney was not made whole by the damages awarded in the action against Orthopaedics. In such a scenario, Toney would be permitted to attempt to establish that Dr. Webb committed a separate act of malpractice and recover damages from him for that act so long as she was also able to establish that Dr. Webb caused a separate and distinct injury.[10]

Toney had a full and fair opportunity to litigate her total damages arising from Orthopaedics' malpractice, which included the injuries she suffered as a result of Dr. Webb's alleged malpractice. Consequently, we find that there is an identity of issues as to damages and that Toney is collaterally estopped from seeking a second recovery for the same injuries from Dr. Webb.

■ This is not to say, however, that Dr. Webb should have been granted summary judgment in his favor. We merely find that Toney is precluded from recovering additional monetary damages from Dr. Webb for injuries for which she has already been compensated. Toney has not, however, been afforded an opportunity to attempt to establish whether Dr. Webb is liable for malpractice. In other words, there is not an identity of issues—and therefore collateral estoppel does not apply—when it comes to establishing whether Dr. Webb committed medical malpractice when he treated Toney's infection. We are mindful that there is no monetary incentive to pursuing a claim against Dr. Webb based on our conclusion that Toney recovered her full measure of damages. Although the recovery of damages is undeniably a major impetus in the pursuit of any lawsuit, we must not totally discount an injured plaintiff's desire to prove that she has been wronged by another to achieve a catharsis of sorts. Hence, we conclude that Toney, if she so chooses, should be permitted the opportunity to establish Dr. Webb's negligence.[11]

Affirmed.

RILEY, J., and MAY, J. concur.

---

**10.** Set-off would apply to such an award, however, to prevent double recovery. Here, we need not reach the issue of set-off because

Toney is precluded from recovering any additional sums from Dr. Webb.

**11.** Because we have decided that Toney can pursue a claim against Dr. Webb to establish

whether he committed an act of malpractice against her, we need not reach Toney's arguments that summary dismissal of Toney's claim against appellants contravenes the Indiana Constitution and promotes a lack of accountability for acts of a health care provider in caring for persons injured by the preceding negligence of another health care provider.