[No. 45737. En Banc. May 31, 1979.]

BRUCE LINDQUIST, ET AL, *Respondents,* v. DANIEL M. DENGEL, ET AL, *Petitioners.*

*Gavin, Robinson, Kendrick, Redman & Mays, William H. Mays,* and *Dennis L. Fluegge,* for petitioners.

*Rodney M. Reinbold* and *Edward A. Dawson,* for respondents.

HOROWITZ, J.—This case raises the question whether we must carve out an exception for physicians to the general rule that a tort–feasor is liable for the exacerbation, or augmentation in severity, of a plaintiff's injuries resulting from later medical treatment where the tort–feasor's negligence arguably created the need for that treatment. We hold the rule does apply to physicians and affirm the decision of the Court of Appeals.

Respondent Bruce Lindquist first consulted petitioner Dr. Daniel Dengel, a family practitioner, in February 1972. A family practitioner is not considered to be a specialist, and may be described as a general practitioner. At the time of the February visit Mr. Lindquist had a fever and other symptoms suggesting bronchitis. He had a history of lung disease which may have been tuberculosis, and as a part of the examination Dr. Dengel had a chest X–ray made. The X–ray was sent to Dr. George Rodkey of the Edgecliff Tuberculosis Sanitarium for evaluation. Dr. Rodkey examined the film, found evidence of possible tuberculosis, and recommended both that sputum studies be made to determine whether the disease was active, and that further X–rays be made in 3 to 4 months.

In April Dr. Dengel discussed these recommendations with Mr. Lindquist and gave him a complete physical examination. Dr. Dengel testified that he ordered his nurse to give Mr. Lindquist a container for sputum, and that he himself gave Mr. Lindquist directions for giving the sample and sending it to a laboratory for analysis. Mr. Lindquist testified he was not given such a container. Dr. Dengel further testified that he told Mr. Lindquist to schedule a repeat X–ray pursuant to Dr. Rodkey's recommendation. Mr. Lindquist did not do so, however, and the X–ray was not taken.

Although Dr. Dengel treated Mr. Lindquist for an unrelated illness in May 1972, no further discussion or treat-

ment of the lung problem occurred until October of 1973, when Mr. Lindquist consulted the doctor for treatment of pneumonia–like symptoms. Mr. Lindquist did not respond to treatment and was hospitalized. Tests done during that hospitalization confirmed a diagnosis of tuberculosis, and Dr. Dengel immediately referred Mr. Lindquist to Dr. Rodkey of the Edgecliff Clinic for further treatment. Dr. Dengel thereafter had no responsibility for Mr. Lindquist's treatment and was not consulted again until after Mr. Lindquist was discharged from the Edgecliff Clinic.

At the Edgecliff Clinic Dr. Rodkey surgically removed a substantial portion of Mr. Lindquist's left lung. Although Mr. Lindquist is cured of the disease, he alleges he is permanently partially disabled as a result of the loss of a part of his lung, and is unable to resume his former job. He testified he must now be confined to more sedentary jobs than he performed in the past, and has suffered a substantial loss in salary.

Mr. Lindquist brought suit against Dr. Dengel, alleging the doctor negligently failed to make a diagnosis early enough to prevent the ultimate development of his disease which necessitated surgery. He introduced evidence at trial by means of the testimony of Dr. Rodkey that if the disease had been diagnosed earlier less drastic forms of treatment could have been used, surgery would not have been required, and Mr. Lindquist's work potential would not have been diminished.

Dr. Dengel introduced evidence, also by means of an expert witness, that surgery was not an appropriate treatment for Mr. Lindquist's condition even at the more advanced stage diagnosed in the fall of 1973. The witness, Dr. Leonard Hudson, testified that drug therapy was the treatment which should have been given, and that Mr. Lindquist's medical records do not indicate that surgery should have been performed.

The jury was instructed on the rule that physicians acting independently of one another in diagnosing and treat-

ing a patient are not liable for the negligence of the other.[1] The court rejected Mr. Lindquist's proposed instruction that a negligent doctor cannot avoid liability for aggravation of injuries on the ground they resulted from negligent later treatment, where that treatment was necessitated by his own negligence.[2] The jury found Mr. Lindquist 50 percent negligent and Dr. Dengel 50 percent negligent, and set total damages at $5,000. Judgment was accordingly entered for Mr. Lindquist in the amount of $2,500.

Mr. Lindquist, hereinafter referred to as respondent, appealed the judgment, contending the trial court's failure to give his requested instruction led the jury to believe Dr. Dengel was not responsible for the bulk of his injuries which resulted from the surgery, and thus to assess damages at such a low figure. The Court of Appeals agreed that the instruction should have been given, holding that the failure to give the requested instruction, while giving instruction No. 15 regarding separate liability, effectively excused the doctor from liability for damages arising from subsequent medical treatment, even though his alleged negligence may have created the need for that treatment. The Court of Appeals thus remanded for a new trial on all issues. This court granted Dr. Dengel's petition for discretionary review. We affirm.

The key argument urged by petitioner is that the tort rule of liability for harm resulting from medical treatment necessitated by a tort–feasor's negligent conduct should not apply where the alleged tort–feasor is a physician. Thus, he

---

[1]Instruction No. 15 was as follows:

"Physicians who are engaged and acting independently of each other in diagnosing and treating a patient during different and distinct periods of time, each is only liable to his patient for his own wrong or negligence, and not for the negligence of the other."

[2]Respondent's proposed instruction A was as follows:

"A doctor, who is under a duty to comply with the recognized standard of practice for his profession prevailing at the time of treatment, cannot avoid liability which he would otherwise have for aggravation of injuries to his patient, if any, on the ground that it was caused by a negligent act of a later treating physician."

claims, respondent's requested instruction on this rule was properly rejected. He urges first that the rule was not intended to apply to physicians, and second, that application of the rule would discourage general practitioners from referring patients to specialists. We cannot agree.

 The basic rule of liability for harm resulting from treatment of injuries caused by a tort–feasor's negligent conduct is stated in Restatement (Second) of Torts § 457 (1965):

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

This rule has long been applied in this state. *See Adams v. Allstate Ins. Co.*, 58 Wn.2d 659, 669, 364 P.2d 804 (1961); *Martin v. Cunningham*, 93 Wash. 517, 518, 161 P. 355 (1916). *See also DeNike v. Mowery*, 69 Wn.2d 357, 368–71, 418 P.2d 1010 (1966). The rationale of the rule as applied to medical treatment is that negligent or harmful medical treatment is within the scope of the risk created by the original negligent conduct. *See* Restatement (Second) of Torts § 457, comment *b* at 497 (1965).

 Petitioner contends this rule is not intended to apply where the original tort–feasor is a physician, because the foreseeable risk is that the injured person will be forced to submit to medical services, which inevitably carry the risk of increased harm. Where the injured person has already submitted to medical treatment, petitioner argues, the rule does not apply. This appears to be a distinction without a difference. As noted by the Court of Appeals, where malpractice results in an injury for which a physician is liable, the risk created includes that of additional medical treatment and, perhaps, additional harm. There is no reason in principle to create a special exception to the rule of liability for harm which is foreseeable and within the scope of the risk merely because the tort–feasor is a physician.

*See Cokas v. Perkins,* 252 F. Supp. 563, 565 (D.D.C. 1966).

■ Petitioner also urges, however, that applying the rule to physicians would discourage general practitioners from referring patients to specialists, to the detriment of all patients. Again we cannot agree. It is clearly in the best interest of both the patient and the physician that the patient be referred to a specialist as soon as the diagnosis indicates such expert treatment is required. To delay a referral under such circumstances could itself be a breach of the general practitioner's duty. The general practitioner would be liable for harm resulting from that specialist's treatment only where his or her own negligence caused a harm or injury which itself necessitated the care of the specialist. If the general practitioner is not negligent, he or she will bear no liability for injury or exacerbation of the condition resulting from treatment by the specialist. *See Reder v. Hanson,* 338 F.2d 244 (8th Cir. 1964).

We agree that a second principle of tort law applicable to cases of alleged medical malpractice is that physicians acting independently of one another are liable only for their own wrong. *Conrad v. Lakewood Gen. Hosp.,* 67 Wn.2d 934, 410 P.2d 785, 10 A.L.R.3d 1 (1966). This rule was embodied in instruction No. 15 and would be applicable in this case if the jury were to decide that only one of the treating physicians was negligent. If petitioner were not negligent, for example, he could bear no liability for the negligence of other physicians treating Mr. Lindquist. This does not mean, however, that he can avoid liability for the harm caused by treatment from other physicians if his own negligence was the cause of the injury which necessitated that treatment. We conclude that the requested instruction on this rule should have been given.

Petitioner claims there is no evidence in the record to support the requested instruction. While Dr. Hudson refrained from labeling Dr. Rodkey's treatment as negligent, however, he did testify regarding the standard of care for treatment of the type of disease Mr. Lindquist suffered, and that surgery was not an appropriate treatment. *Cf.*

*Versteeg v. Mowery,* 72 Wn.2d 754, 759, 435 P.2d 540 (1967); *Skodje v. Hardy,* 47 Wn.2d 557, 288 P.2d 471 (1955) (where no evidence shows a standard of care or breach of that standard, no issue of negligence arises). There was ample evidence, put forward by petitioner himself, to raise the issue of liability for subsequent harmful or negligent medical treatment.

Respondent contends that the new trial should be restricted to the issue of damages. He relies principally on *Owens v. Scott Publishing Co.,* 46 Wn.2d 666, 284 P.2d 296 (1955) for the proposition that when the trial court's error affects solely the issue of damages it is improper to grant a new trial on the issue of liability. In the *Owens* case, however, the court held the jury was "properly and adequately instructed . . . on all phases of the law applicable to the case." *Owens v. Scott Publishing Co., supra* at 681. The only error was in the formula which the jury used to calculate damages. Thus the new trial was limited to the issue of damages.

In this case, however, the jury was not properly instructed on a crucial aspect of causation, an element at the very heart of tort liability. Certainly the amount of damages to be awarded is closely related to the question of causation. We cannot say, however, that this aspect of causation can be completely separated from the question of liability. We conclude that justice requires that a new trial be granted on all issues. Moreover, we may infer from the jury's finding that petitioner and respondent were equally negligent and the low award of damages to respondent that the issue of liability in this case was close. Where inadequate damages are coupled with a close case on the issue of liability, a new trial on all issues is required. *Cyrus v. Martin,* 64 Wn.2d 810, 812, 394 P.2d 369 (1964).

The decision of the Court of Appeals is affirmed and the case is remanded for a new trial on all issues.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.