215 P.3d 185 (2009)
DOT FOODS, INC., Petitioner,
v.
WASHINGTON DEPT. OF REVENUE, Respondent.
No. 81022-2.
Supreme Court of Washington, En Banc.
Argued January 20, 2009.
Decided September 10, 2009.
*186 Howard Mark Goodfriend, Edwards Sieh Smith & Goodfriend PS, Jacquelyn A. Beatty, Attorney at Law, Seattle, WA, for Petitioner.
Cameron Gordon Comfort, Attorney General's Office, Olympia, WA, for Respondent.
David R. Ebel, Schwabe Williamson & Wyatt, PC, Seattle, WA, Dean A. Heyl, Jeremy Tunis, Direct Selling Association, Washington, DC, for Amicus Curiae on behalf of Direct Selling Association.
Glade Kim Risenmay, John H. Ridge, Stoel Rives LLP, Seattle, WA, for Amicus Curiae on behalf of Melaleuca, Inc.
Dirk Jay Giseburt, Davis Wright Tremaine LLP, Seattle, WA, for Amicus Curiae on behalf of URM Stores, Inc.
C. JOHNSON, J.
¶ 1 This case involves a challenge to the Department of Revenue's (Department) interpretation of RCW 82.04.423, which provides a tax exemption for certain out-of-state sellers. Until 2000, the Department treated Dot Foods, Inc., an out-of-state seller, as exempt from Washington's Business and Occupation (B & O) tax. At all relevant times, Dot sold consumer and nonconsumer products through its direct seller's representative, Dot Transportation, Inc. (DTI), and some of the consumer products ultimately ended up in permanent retail establishments. In 1999, in amending WAC 458-20-246, the Department revised its interpretation of the qualifications needed for the exemption. This revision changed the Department's prior interpretation, and under the new interpretation, Dot no longer qualified for the exemption for any of its sales. Dot filed suit challenging this interpretation, and the trial court entered summary judgment in favor of *187 the Department, which the Court of Appeals affirmed. We reverse.

FACTS
¶ 2 Dot, an Illinois corporation, sells food products to dairies, meat packers, food processors, and other food service companies in Washington. Dot contracts with its wholly owned subsidiary, DTI, to solicit the sales of Dot products in Washington. DTI sells the products to customers that either use Dot products as ingredients to make other products, which these customers later sell to permanent retail establishments (e.g., grocery stores), or they resell Dot products to other food service operators or institutions (e.g., nursing homes, schools, hospitals, and cafeterias). Over 99 percent of Dot's products are consumer products such as dry foods, sauces, and refrigerated foods. The remainder of Dot's sales come from nonconsumer products, such as cash register receipt rolls, pretzel display cabinets, straw dispensers, and chef hats.
¶ 3 For many years, Dot received a B & O tax exemption for 100 percent of its sales pursuant to RCW 82.04.423, which exempts from the tax "gross income derived from the business of making sales at wholesale or retail" if the seller meets several criteria listed in the statute. RCW 82.04.423(1). Among these criteria, the out-of-state seller must "[m]ake[] sales in this state exclusively to or through a direct seller's representative." RCW 82.04.423(1)(d). Under the statute, a "direct seller's representative" is one who buys, sells, or solicits the sale of consumer products in places other than a permanent retail establishment. RCW 82.04.423(2). Between 1997 and 2000, Dot received B & O tax-exempt status even though it sold both consumer and nonconsumer products. Also, Dot received this tax exemption during this time even though some of the products purchased from Dot were later sold to permanent retail establishments without Dot's or DTI's involvement.
¶ 4 The statutory language at issue here creates a tax exemption for an out-of-state seller which meets certain requirements, including making its sales "exclusively to or through [its] direct seller's representative." RCW 82.04.423(1)(a)-(d).
¶ 5 In relevant part, RCW 82.04.423 provides:
(1) This chapter shall not apply to any person in respect to gross income derived from the business of making sales at wholesale or retail if such person:
....
(d) Makes sales in this state exclusively to or through a direct seller's representative.

(2) For purposes of this section, the term "direct seller's representative" means a person who buys consumer products on a buy-sell basis or a deposit-commission basis for resale, by the buyer or any other person, in the home or otherwise than in a permanent retail establishment, or who sells, or solicits the sale of, consumer products in the home or otherwise than in a permanent retail establishment; and ....
(Emphasis added.)
¶ 6 In late 1999, the Department revised its interpretation of RCW 82.04.423. See WAC 458-20-246 (revised interpretation took effect December 31, 1999). This new interpretation required that, in order to qualify for the exemption, out-of-state sellers could never sell any consumer products that anyone will eventually sell in a permanent retail establishment anywhere in the chain of distribution. The Department audited Dot based on the new interpretation for the years 2000 through 2004. Because some of Dot's products eventually end up in permanent retail establishments, like grocery stores, the Department assessed a B & O tax against Dot for the tax periods during January 1, 2000 through December 31, 2003, for 100 percent of its in-state sales.
¶ 7 Dot paid the tax and filed a refund action in Thurston County Superior Court. Both sides filed motions for summary judgment. In support of summary judgment, the Department argued Dot did not qualify for the exemption because (i) Dot's sales were not exclusively consumer products and (ii) some of Dot's products eventually ended up *188 in permanent retail establishments.[1] The trial court agreed on both grounds and entered summary judgment in favor of the Department. Dot appealed, and the Court of Appeals affirmed the trial court on the issue of requiring the exclusive sale of consumer products. On the issue of products reaching permanent retail establishments, the Court of Appeals held the Department's 2000 interpretation of the statute was reasonablethe sale of goods cannot be made to a permanent retail establishment anywhere in the chain of distribution, even if the out-of-state seller's sales through its direct seller's representative do not occur in a permanent retail establishment. The Court of Appeals held that none of Dot's sales qualify for Washington's B & O tax exemption. Dot Foods, Inc. v. Dep't of Revenue, 141 Wash.App. 874, 173 P.3d 309 (2007). Dot's petition for review was accepted at 163 Wash.2d 1052, 187 P.3d 751 (2008).[2]

ISSUES
¶ 8 1. Under RCW 82.04.423, does an out-of-state seller qualify for the B & O tax exemption when it sells some nonconsumer products?
¶ 9 2. If so, does such a seller qualify for the B & O tax exemption when some of its products ultimately end up in permanent retail establishments?

ANALYSIS

Issue 1
¶ 10 We review questions of statutory interpretation de novo. State v. J.P., 149 Wash.2d 444, 449, 69 P.3d 318 (2003). In reviewing a statute, we give effect to the legislature's intent, primarily derived from statutory language. Where statutory language is plain and unambiguous, we ascertain the meaning of the statute solely from its language. We read an unambiguous statute as a whole and must give effect to all of its language.
¶ 11 Although the relevant statutory provisions here do not specify whether Dot may sell consumer and nonconsumer products or exclusively consumer products, the Department argued below and to us the statutory provisions require sales of exclusively consumer products. The Court of Appeals interpreted the statute consistent with this argument. The Court of Appeals agreed that the term "exclusively" found in RCW 82.04.423(1)(d) (requiring one to sell exclusively to or through a direct seller's representative) is imputed to the type of sales referred to in RCW 82.04.423(2) (defining a direct seller's representative as one who buys consumer products). In short, the Department argued and the Court of Appeals agreed that Dot does not qualify for the tax exemption because it sold some nonconsumer products through DTI.
¶ 12 The Court of Appeals supported this interpretation of the statute because it reasoned that the Department's and Dot's interpretations of the statute were both reasonable and, as such, the statute was ambiguous. Then construing the statute as a whole, the Court of Appeals found "exclusively," a term not found in subsection (2) of RCW 82.04.423, was imputed to that section from subsection (1)(d). This conclusion means that any sale of a nonconsumer product by a direct seller to or through its direct seller's representative would disqualify the out-of-state seller from benefiting from the tax exemption. While this interpretation results in the statute being clearer, we agree with Dot's argument *189 that the statute does not expressly support this conclusion.
¶ 13 The language of RCW 82.04.423(1) provides: "This [tax] shall not apply to any person in respect to gross income derived from the business of making sales at wholesale or retail...." (Emphasis added.) The fact that the statute describes the type (portion) of gross income that meets the exemption shows that an out-of-state seller may derive portions of its gross income from something other than the sales of consumer products, i.e., nonconsumer products. Subsection (1)(d) requires that sales in this state be made "exclusively" to or through a direct seller's representative to qualify for the exemption. RCW 82.04.423(1)(d) (emphasis added).
¶ 14 In the wording of the statute, the term "exclusively" modifies the method by which a direct seller makes its sales in Washington. Sales must be made "exclusively to or through a direct seller's representative," DTI in this case. RCW 82.04.423(1)(d) (emphasis added). "Exclusively" does not, as the Department contends and the Court of Appeals held, modify the type of purchases that a direct seller's representative must make (i.e., consumer versus nonconsumer) in order for the out-of-state seller to qualify for B & O tax-exempt status. To achieve such an interpretation, we would have to import additional language into the statute that the legislature did not use. We cannot add words or clauses to a statute when the legislature has chosen not to include such language. J.P., 149 Wash.2d at 450, 69 P.3d 318.
¶ 15 Before the 1999 revision to WAC 458-20-246, the Department interpreted the statute to permit an out-of-state seller, like Dot, to claim 100 percent exempt status from the B & O tax even though some of its sales consisted of nonconsumer products. This had been the case for companies in a similar situation to Dot apparently since 1984, just after the statute was enacted. The wording of the statute has not changed since its enactment; only the Department's interpretation and application of the statute have changed. Considering the foregoing, we reject the Department's interpretation. To do otherwise would add words to and rewrite an unambiguous statute.
¶ 16 The Department argues that its statutory interpretation is entitled to judicial deference. While we give great deference to how an agency interprets an ambiguous statute within its area of special expertise, "such deference is not afforded when the statute in question is unambiguous." Densley v. Dep't of Ret. Sys., 162 Wash.2d 210, 221, 173 P.3d 885 (2007). The Department's argument for deference is a difficult one to accept, considering the Department's history interpreting the exemption. Initially, and shortly after the statutory enactment, the Department adopted an interpretation which is at odds with its current interpretation. One would think that the Department had some involvement or certainly awareness of the legislature's plans to enact this type of statute. As a general rule, where a statute has been left unchanged by the legislature for a significant period of time, the more appropriate method to change the interpretation or application of a statute is by amendment or revision of the statute, rather than a new agency interpretation.
¶ 17 Applying the statutory language here, we have an out-of-state seller (Dot) making sales exclusively through its direct seller's representative (DTI). This is the relationship required by the statute to qualify for the exemption from B & O tax. Under the statutory language, Dot qualifies for the exemption today just as it did before the Department changed its interpretation. As such, Dot is not disqualified from being exempt from Washington's B & O tax to the extent any portion of its sales qualify for the exemption.

Issue 2
¶ 18 The Department also argues for a separate basis on which to disqualify Dot from the tax exemption. The Department argues that, because some of Dot's products ultimately end up in permanent retail establishments due to downstream commerce, Dot is not exempt from the B & O tax. The Department revised WAC 458-20-246 *190 to prevent an out-of-state seller from qualifying for the exemption if some of its products ultimately end up in a permanent retail establishment.[3] But, as noted above, the Department's interpretation is a revised interpretation to a statute that has remained unchanged since its enactment in 1983. We find that the Department's change in interpretation is not in accord with the statutory language.
¶ 19 In relevant part, RCW 82.04.423(1)(d) requires an out-of state seller to "[m]ake[] sales in this state exclusively to or through a direct seller's representative." A direct seller's representative is one who, as it pertains to this matter, "solicits the sale of[] consumer products in the home or [somewhere other] than in a permanent retail establishment." RCW 82.04.423(2) (emphasis added).
¶ 20 Dot argues that, if an out-of-state seller (Dot) makes sales exclusively through its direct seller's representative (DTI) and that representative solicits the sales of consumer products outside of a permanent retail establishment, then the out-of-state seller is exempt for those sales even if the product ultimately ends up in a permanent retail establishment due to other downstream commerce. Dot's argument is based on the premise that it has no control over any downstream sales of its products once it sells through DTI to a purchaser. Put another way, if a person buys one of Dot's products and then turns around and sells it to a permanent retail establishment, this is beyond Dot's control. Dot asserts that, in such a situation, Dot does not lose its tax-exempt status.
¶ 21 Melaleuca, Inc., in its amicus brief, presents an argument that reinforces Dot's reading of the statute's language:
"[A] proper interpretation of all of the words in the statute makes it understandable that the Legislature only imposed restrictions on sales activities to the extent that the direct sales company could have some control over them. This is not only logical, it is undoubtedly required by the Due Process Clauses of both the United States and the Washington Constitutions. U.S. Const., Amend. XIV, § 1; Wash. Const., Art. I, § 3. A state cannot impose taxes on someone based upon the actions of another person, who is not the seller's agent, and whose actions are beyond the tax payer's control."
Amicus Curiae Br. of Melaleuca, Inc., at 11. We agree with this analysis. Under the statutory provision, the Department cannot hold Dot responsible for taxes on sales it essentially has nothing to do with. The statute's plain language pertains to a requirement that an out-of-state seller "[m]akes sales in this state exclusively to or thorough a direct seller's representative." RCW 82.04.423(1)(d). The statute's language does not pertain, however, to some downstream purchaser of a product after the out-of-state seller has made its final sale to or through its direct seller's representative. The tax or tax exemption under the terms of the statute focuses on the seller's transaction with the seller's product, not on what some purchaser opts to do with the product after the transaction with Dot is completed. Applied here, Dot's sales through DTI are the final sales as far as the transaction concerns Dot; if Dot's final sale customer later resells the product or a byproduct of that product to a permanent retail establishment, such a transaction has no effect on Dot's tax status.
¶ 22 The Department also argues this case is analogous to Stroh Brewery Co. v. Dep't of Revenue, 104 Wash.App. 235, 15 P.3d 692 (2001) (holding the tax-exempt status inapplicable because of sales that end up in permanent retail establishments). This argument is based on the Department's interpretation of the statute as setting up a wholesale and retail dichotomy. To support this proposition, the Department points to RCW 82.04.423(2), which provides in relevant part:
For purposes of this section, the term "direct seller's representative" means a person who buys consumer products on a buy-sell basis or a deposit-commission basis for *191 resale, by the buyer or any other person, in the home or otherwise than in a permanent retail establishment, or who sells, or solicits the sale of, consumer products in the home or otherwise than in a permanent retail establishment....
The Department reads this language as setting forth two separate means of sales: one for wholesalers and one for retailers. That is, the phrase that begins "who buys consumer products on a buy-sell basis or a deposit-commission basis for resale" encompasses all wholesale transactions, and the phrase beginning "who sells, or solicits the sale of, consumer products ..." refers to retail sales. The Department finds support for this reading in the language of RCW 82.04.423(1), which discusses out-of-state sellers who derive income "from the business of making sales at wholesale or retail." (Emphasis added.) But relying on Stroh for support of this argument is misplaced.
¶ 23 The Stroh analysis was guided by the parties' concessions that such a retail/wholesale dichotomy exists. Here, neither party makes such a concession, and notwithstanding the concession in Stroh, the Court of Appeals interpretation is not controlling here.
¶ 24 Nonetheless, if we did entertain the Department's argument and held that a wholesale/retail dichotomy exists, the argument would fail based on other reasons that distinguish Stroh from this case. The Department premises its argument on the position that Dot engaged in wholesale sales and not retail sales. The Department asserts that wholesalers' products must for all time be sold only in nonpermanent retail establishments because their products may be resold "by the buyer or any other person" only in a nonpermanent retail establishment. RCW 82.04.423(2) (emphasis added). Put otherwise, this provision contemplates downstream commerce. As for retailers, the Department contends that "a retail sale is the final sale (i.e., downstream commerce is not contemplated), and the legislature therefore did not need to include the words `or any other person' to restrict the sale of retailer consumer goods to non-permanent retail establishments." Suppl. Br. of Resp't at 15, n. 20. Either way, argues the Department, out-of-state sellers whose products end up in permanent retail establishments at any point in the chain of distribution cannot receive the exemption.
¶ 25 The Department believes that under RCW 82.04.423(1)(d) "[m]aking sales to a direct seller's representative" refers to sales at wholesale and that "[m]aking sales through a direct seller's representative" refers to retail sales. Suppl. Br. of Resp't at 14. But curiously, the Department then goes on to assert that, although Dot makes sales through a representative, Dot is nonetheless a wholesaler. For this proposition, the Department cites to nothing more than the portions of the record describing how Dot makes sales. Suppl. Br. of Resp't at 15 (citing Clerk's Papers at 87-88). Dot, on the other hand, asserts that its activities fall under the retailing provision. Suppl. Br. of Pet'r at 13.
¶ 26 The confusion here arises from the fact that while Dot's activities may intuitively look like wholesaling because its direct seller's representative sells to distributors, Dot's activities actually fall under the retailing provision of RCW 82.04.423(2). That is, Dot's sales through DTI to a purchaser are the final sales, as far as Dot is concerned.
¶ 27 With Dot's sales falling under the retailing provision, the nature of Dot's sales are distinguishable from that of Stroh Brewery. There, the direct sales were made to a direct seller's representative which was itself a distributor to permanent retail establishments, a wholesaling arrangement that invokes the "or any other person" statutory language. But, unlike Stroh, Dot made the direct sales here through DTI and not to it. As such, Stroh is unhelpful to the Department in this case.
¶ 28 Here, the statute at issue is not ambiguous.[4] Because we hold the express language of RCW 82.04.423(2) does not require downstream sales to be restricted from permanent *192 retail establishments or to consist exclusively of consumer goods, Dot remains qualified for the B & O tax exemption to the extent its sales continue to qualify for the exemption.

CONCLUSION
¶ 29 We reverse the Court of Appeals and remand to the trial court.
WE CONCUR: ALEXANDER, C.J., SANDERS, J. JOHNSON, JJ., and SWEENEY, J.P.T.
STEPHENS, J. (dissenting).
¶ 30 RCW 82.04.423 is a narrow statutory exemption from Business and Occupation (B & O) tax for certain out-of-state direct sellers of consumer products, for example those whose business involves in-home sales of cosmetics or household products. By holding that Dot Foods, Inc. (Dot) is entitled to this exemption notwithstanding that it makes sales through an entity that does not qualify as a "direct seller's representative," the majority expands the exemption well beyond its intended scope. RCW 82.04.423. I respectfully dissent.
¶ 31 Chapter 82.04 RCW provides a comprehensive scheme for B & O tax in Washington, under which "[t]axation is the rule and exemption is the exception." Budget Rent-A-Car of Wash.-Or., Inc. v. Dep't of Revenue, 81 Wash.2d 171, 174, 500 P.2d 764 (1972); see also RCW 82.04.220 (providing that every business must pay B & O tax on gross revenues). Because the statute at issue is a tax exemption, we construe it narrowly. Budget Rent-A-Car, 81 Wash.2d at 174-75, 500 P.2d 764. "A tax exemption presupposes a taxable status and the burden is on the taxpayer to establish eligibility for the benefit." In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 778, 903 P.2d 443 (1995). The Department of Revenue (Department) advances multiple reasons why Dot cannot meet this burden, but the first is dispositive: Dot does not make sales in Washington exclusively to or through a direct seller's representative.
¶ 32 RCW 82.04.423 sets forth several conditions a taxpayer must meet in order to receive the tax exemption. At issue here is RCW 82.04.423(1)(d), which provides that the direct seller must "[m]ake[] sales in this state exclusively to or through a direct seller's representative." (Emphasis added.) In turn, RCW 82.04.423(2) defines "direct seller's representative" as one who deals exclusively in consumer products. Specifically, a direct seller's representative either buys consumer products on a buy-sell basis or a deposit commission basis for resale, or sells or solicits the sale of consumer products, in each case "in the home or otherwise than in a permanent retail establishment." Id. There is no dispute that this exemption was designed to provide a tax exemption for those engaged in direct sales of consumer products, typically through in-home parties or door-to-door marketing. The record identifies some well-known direct selling companies, including Mary Kay, Avon, Pampered Chef, Longaberger, and Creative Memories. Clerk's Papers at 201-02.
¶ 33 The majority reads the narrow tax exemption in RCW 82.04.423 to apply to Dot, which sells both consumer and nonconsumer products, reasoning that the only requirement is that the sales occur to or through Dot's direct seller's representative. See Majority at 189. One flaw in this reasoning is that it regards Dot Transportation, Inc. (DTI) as a "direct seller's representative" even though DTI does not meet the definition of a direct seller's representative because it engages in the sale of nonconsumer products on behalf of Dot. The majority misreads the definition of direct seller's representative to conclude that it is not limited to one who sells consumer products because the word "exclusively" is not contained in the statutory clause defining direct seller's representative. Yet, this is not necessary when the definition of direct seller's representative is by its terms restricted to one whose business activity involves a single category of goodsconsumer products. If the legislature intended an out-of-state direct seller's representative to also deal in nonconsumer products on behalf of the direct seller, it would have said as much. The majority reads the restriction out of the definition entirely. Under the majority's reading, a *193 seller whose business activity involves, for example, 99.9 percent nonconsumer products could claim the exemption so long as it included.1 percent consumer products in its sales. This greatly expands the narrow statutory exemption the legislature created.
¶ 34 The other flaw in the majority's reasoning is that it ignores the structure of the statute setting forth the exclusivity conditions that must be met to qualify for the exemption. The statute must be read as a whole. See Davis v. Dep't of Licensing, 137 Wash.2d 957, 970-71, 977 P.2d 554 (1999). The majority focuses solely on the condition in RCW 82.04.423(1)(d) that Dot's sales must be exclusively to or through a direct seller's representative, and concludes that "Dot is not disqualified from being exempt from Washington's B & O tax to the extent any portion of its sales qualify for the exemption." Majority at 189 (emphasis added). The majority does not explain what it means by "to the extent any portion of its sales qualify for the exemption," but the implication is that the exemption applies to that portion of Dot's sales involving consumer products. The majority notes that 99 percent of Dot's sales are consumer products and Dot argues that, at a minimum, it should be exempt from B & O tax as to these sales. See Majority at 188-89; Suppl. Br. of Pet'r at 11; Br. of Appellant at 28-29; Pet. for Review at 9-10.[1] Additionally, the majority emphasizes the statutory language providing that B & O tax "`shall not apply to any person in respect to gross income derived from the business of making sales....'" Majority at 189 (quoting RCW 82.04.423(1)).
¶ 35 The problem with the majority's reading of the statute is that RCW 82.04.423 provides no means for apportioning the B & O tax obligation between qualifying and nonqualifying business activity. Instead, the statute describes conditions that a person not a particular business activitymust meet in order to qualify for the tax exemption. Each condition relates to the status of the qualifying out-of-state seller: the person must not (1) own or lease real property in Washington (RCW 82.04.423(1)(a)); (2) maintain a stock of tangible personal property in the state for sale in the ordinary course of business (RCW 82.04.423(1)(b)); or (3) be incorporated under the laws of the state (RCW 82.04.423(1)(c)); and must (4) make sales exclusively to or through a direct seller's representative (RCW 82.04.423(1)(d)). These are all-or-nothing conditions, defining the limited nexus between the out-of-state seller and Washington that justifies the exemption. Nothing in the statutory language or structure suggests that a taxpayer who does not meet all of these conditions nonetheless qualifies for the tax exemption "to the extent" it has some business activity that does not involve these conditions.
¶ 36 Understood in context, therefore, the condition requiring the qualifying taxpayer to be engaged exclusively in sales to or through a direct seller's representative cannot be read to allow for a partial tax exemption for sales of consumer goods. As with the other conditions, if the taxpayer does not meet all of the requirements for the exemption, it does not qualify. In this regard, it makes no difference that 99 percent of Dot's sales were consumer products, just as it would not matter if 99 percent of the real property a taxpayer leased or owned was outside of the state of Washington.[2]
¶ 37 The majority makes much of the Department's amendment of WAC 458-20-246 in 1999, which resulted in a revised interpretation of RCW 82.04.423 under which Dot no longer qualified for the tax exemption. The majority goes so far as to question the validity of this interpretive regulation, suggesting *194 that "the more appropriate method to change the interpretation or application of a statute is by amendment or revision of the statute, rather than a new agency interpretation." Majority at 189. This is dangerous language. Certainly, the executive branch has the constitutional authority to interpret and implement statutes within its purview and it is not required to seek a legislative change whenever it determines a prior interpretation was erroneous. Our deference to an agency's interpretation of statutes within its area of expertise recognizes this constitutional authority. See Weyerhaeuser Co. v. Dep't of Ecology, 86 Wash.2d 310, 314-17, 545 P.2d 5 (1976) (holding court must give considerable weight to agency's interpretation of ambiguous statute absent compelling indication such interpretation conflicts with legislative intent). There is no support for the majority's refusal to defer to the Department's interpretation of RCW 82.04.423 because it would have preferred that the agency seek a legislative amendment instead of exercising its rule-making power. Instead, the Department's interpretation of a statute that it is entrusted to administer is entitled to judicial deference. See id. at 314-15, 545 P.2d 5; accord Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 628, 869 P.2d 1034 (1994).[3]
¶ 38 I would affirm the Court of Appeals and hold that Dot does not qualify for the tax exemption under RCW 82.04.423 because it does not meet the exclusivity requirements of that statute.
WE CONCUR: OWENS, CHAMBERS, and MADSEN, JJ.
NOTES
[1] The Department did not base its original tax assessment on Dot's apparent sales of nonconsumer goods. Instead, the Department focused its private letter ruling solely on the eventual placement of Dot's goods in permanent retail establishments. Suppl. Br. of Pet'r at 4. The Department raised the nonconsumer goods issue at the beginning of this litigation before the trial court. The trial court considered both the nonconsumer/consumer goods issue and the permanent retail establishment issue, and the Court of Appeals reached both issues as well. (Dot has not raised any argument seeking to limit the Department to its reasons for taxing Dot to those found in its private letter ruling, so we discuss and resolve the issue here.)
[2] After we accepted review, both Melaleuca, Inc., (a direct selling company) and the Direct Selling Association (a national organization representing direct sellers) filed amicus briefs. Another grocery distribution organization, URM Stores, Inc., filed an amicus brief with the Court of Appeals.
[3] The preamendment WAC 458-20-246 (1984) made no mention of this requirement. But, in relevant part, the amended version provides: "Regardless of to whom the [direct seller's] representative sells, the retail sale of the product must take place either in the buyer's home or in a location that is not a permanent retail establishment." WAC 458-20-246(4)(b)(i)(B).
[4] Because the statute is not ambiguous and we can derive its meaning from its face, we need not turn to legislative history to discern the legislative intent behind the provision. At any rate, nothing in the legislative history appears to be conclusive for one side or the other.
[1] Dot also argues that it qualifies for the exemption because its sales of nonconsumer products are "de minimis." Suppl. Br. of Pet'r at 10; Pet. for Review at 10. The majority does not appear to endorse this view, and RCW 82.04.423 plainly does not contain a "de minimis" provision.
[2] Amicus Melaleuca, Inc., argues that a direct seller should not be disqualified from receiving the tax exemption under RCW 82.04.423 simply because it sells marketing and sales materials to its representatives, in addition to consumer products. Amicus Curiae Br. of Melaleuca, Inc., at 16. This type of sale is not at issue in this case. Dot acknowledges that its sales of nonconsumer products do not involve marketing and sales materials. Dot Food's Answer to Amicus Curiae Brs. at 7.
[3] Moreover, the Department's rule revising its interpretation of the statute is not focused on whether Dot's sales of nonconsumer products disqualify it from receiving the tax exemption. As the majority acknowledges, the 1999 regulation was promulgated to address a different concernwhether the tax exemption applies when a direct seller's products are sold in permanent retail establishments. The Department assessed B & O tax against Dot on this basis. The issue of Dot's sales of nonconsumer products arose during the summary judgment proceedings in this case, when the Department argued this as a separate reason why Dot does not qualify for the direct seller's tax exemption. Notably, Dot has not argued that the Department should be precluded by its prior conduct from raising this argument.