IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JUDITH CRUZ,<br><br>      Appellant,<br><br>  v.<br><br>JEREMY JON CHEUNG, ISABELLA ESERJOSE MAZA,<br><br>      Defendants,<br><br>THRIVE PET HEALTHCARE, PP-WA LLC, PATHWAY VET ALLIANCE LLC dba VETERINARY SPECIALTY CENTER OF SEATTLE, a Washington limited liability company; ALYSSA FROESE, DVM and her marital community; NICHOLAS ANGELETTE, DVM and his marital community,<br><br>      Respondents. | No. 87170-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

   DÍAZ, J. — A dog attacked another dog, which then was cared for at an animal hospital. The superior court granted the hospital and its attending veterinarians' motion for summary judgment, dismissing claims of professional negligence and breach of contract. The hospital and the veterinarians continue to assert here that summary judgment as to the professional negligence claims was

proper because *only* the owners of the attacking dog are subject to liability under the original tortfeasor rule and its caselaw. We disagree and reverse that portion of the court's order. We agree, however, with the hospital and the veterinarians that the court properly dismissed the breach of contract claim as duplicative of the professional negligence claims. Thus, we reverse in part, affirm in part, and remand this matter to the trial court for further proceedings consistent with this opinion.

## I.     BACKGROUND

As this appeal follows resolution on summary judgment, we view and present the "facts and reasonable inferences in the light most favorable to the nonmoving part[ies]," here, Cruz and Jeremy Jon Cheung and Isabella Eserojose Maza (Owners), who own Nako. *TracFone, Inc. v. City of Renton*, 30 Wn. App. 2d 870, 875, 547 P.3d 902 (2024).

Nako escaped from the Owners' yard and attacked Eevee, the dog of Judith Cruz, who then took Eevee to an animal hospital called Veterinary Specialty Center (VSC). There, under the care of Nicholas Angelette and Alyssa Froese (Veterinarians), Eevee passed away. Cruz then sued the Owners, VSC, and the Veterinarians in superior court, bringing in pertinent part claims of professional negligence and breach of contract against VSC and the Veterinarians (together, Respondents).

Respondents moved for summary judgment on all claims against them (Motion), which Cruz opposed. The Owners filed a "Joinder in Opposition" to that summary judgment motion. The court granted Respondents' Motion and

2

dismissed all claims against them (Order). Cruz unsuccessfully moved for reconsideration. The court then certified both its Order and order denying reconsideration as final for the purposes of appeal under CR 54(b), RAP 2.2(a)(1), and RAP 2.3(b)(4), a decision which is not contested here.[1] Cruz timely appeals.

## II.    ANALYSIS

### A.    Summary Judgment Standard

In its Order, the court did not explain the basis of its ruling. Regardless, on summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

"Summary judgment is appropriate for resolving pure questions of law as well." *Cornelius v. Wash. State Univ.*, 33 Wn. App. 2d 477, 483, 562 P.3d 792 (2025). To the extent this matter requires statutory interpretation, such questions are reviewed de novo also. *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 154 Wn.2d 345, 350, 119 P.3d 1173 (2005).

### B.    Professional Negligence Claim

VSC and the Veterinarians argue that, because the Owners are "per se" liable for the attack, "[it] then follows that pursuant to RCW 16.08.010, the

---

[1] "CR 54(b) makes an immediate appeal available in situations in which it could be unjust to delay entering a judgment on a distinctly separate claim until the entire case has been finally adjudicated." *Nelbro Packing Co. v. Baypack Fisheries, L.L.C.*, 101 Wn. App. 517, 522-23, 6 P.3d 22 (2000).

Veterinarian Respondents cannot be held liable for Ms. Cruz's injuries and damages sustained, costs of collection of the same which may result from the civil action, or an apportionment of fault or damages under RCW 4.22.070." This is so—the Respondents claim— based on the plain language of chapter 16.08 RCW and because Cruz cannot establish a prima facie case of professional negligence against them due to the original tortfeasor rule. (Citing *Lindquist v. Dengel*, 92 Wn.2d 257, 259, 595 P.2d 934 (1979) ("*Lindquist* II").) We disagree.

It is true that RCW 16.08.010 provides that the "owner or keeper of any dog *shall be liable* to the owner of any animal killed or injured by such dog for the amount of damages sustained and costs of collection, to be recovered in a civil action." (Emphasis added.) In other words, "an owner or keeper of any dog which kills or injures any animal is strictly liable to the animal's owner." *Schneider v. Strifert*, 77 Wn. App. 58, 65, 888 P.2d 1244 (1995).[2]

But that statutory scheme defines liability only as to dog owners or keepers, even if—as Respondents repeatedly assert—the Owners one day will be found "liable for the amount of damages Ms. Cruz sustained for Nako's attack on Eevee." Nowhere does this statute, or any other, further provide that dog owners are *exclusively* liable for such injuries, or otherwise shield any other party from liability

---

[2] And it is true that RCW 16.08.090(1) provides in pertinent part that it "is unlawful for an owner of a *dangerous dog* to permit the dog to be outside the proper enclosure unless the dog is muzzled and restrained by a substantial chain or leash and under physical restraint of a responsible person." (Emphasis added); *see also* RCW 16.08.070(2) (defining "dangerous dog"). In other words, RCW 16.08.090(1) "provide[s] for criminal penalties in connection with ownership of 'dangerous' dogs . . . if the dog is outside the enclosure and outside the owner's residence without proper physical restraint" among other reasons. *Rabon v. City of Seattle*, 135 Wn.2d 278, 289, 957 P.2d 621 (1998).

for its part in such an attack. None of these statutes "specifically precludes apportionment of fault" among multiple parties, as VSC and the Veterinarians now assert.

"To achieve such an interpretation, we would have to import additional language into the statute that the legislature did not use." *Dot Foods, Inc. v. Dep't of Revenue*, 166 Wn.2d 912, 920, 215 P.3d 185 (2009). We "cannot add words or clauses to a statute when the legislature has chosen not to include such language." *Id.* Thus, Respondents' plain language argument fails.

As to Respondents' reliance on the original tortfeasor rule, it is true that our Supreme Court in *Lindquist* II adopted that rule, which originated in *Restatement (Second) of Torts* § 457 (AM. L. INST.1965). 92 Wn.2d at 262. This rule states that, if the "'negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from *normal* efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.'" *Id.* (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 457). Further,

> In such a case, the damages assessable against the actor include not only the injury originally caused by the actor's negligence but also the harm resulting from the manner in which the medical, surgical, or hospital services are rendered, irrespective of whether they are rendered in a mistaken or *negligent* manner.

RESTATEMENT (SECOND) OF TORTS § 457, cmt. a. (emphasis added).

The rationale for this rule originates from the risks involved in medical treatment, namely,

> If the actor knows that his negligence may result in harm sufficiently severe to require such services, he should also recognize this as a

5

risk involved in the other's forced submission to such services . . . and having put the other in a position to require them, the actor is responsible for *any additional injury* resulting from the other's exposure to this risk.

*Id.* at cmt. b. (emphasis added).

Respondents interpret these provisions to mean that, because the Owners are responsible for "any negligent or harmful veterinarian treatment by Veterinarian Respondents," Respondents "are not liable for any alleged breach of any [duty of care] under the original tort-feasor principle." We again disagree.

Our Supreme Court in *Lindquist* II considered whether the original tortfeasor rule should apply to physicians. 92 Wn.2d at 261. The Court held "[t]here is no reason in principle to create a special exception to the rule of liability for harm which is foreseeable and within the scope of the risk merely because the tort-feasor is a physician." *Id.* at 262. The Court did not address whether *only* the original tortfeasor assumes liability for any action of a subsequent medical provider, let alone hold that such providers are entirely shielded from all liability. On the contrary, it held only that, while a general practitioner cannot "avoid liability for the harm caused by treatment from other physicians if his own negligence was the cause of the injury which necessitated that treatment," if a "general practitioner is not negligent, he or she will bear no liability for injury or exacerbation of the condition resulting from treatment by the specialist" physician. *Id.* at 263. The Court did not address the situation where both physicians may be negligent, and liability may need to be apportioned.

"In all actions involving fault of more than one entity," RCW 4.22.070 requires "the trier of fact [to] determine the percentage of the total fault which is

attributable to every entity which caused the claimant's damages." Crucially, our Supreme Court explained that "'responsibility for harm done should be distributed in proportion to the fault of all of the parties involved and not governed by concepts of causation.'" *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 292-93, 840 P.2d 860 (1992) (quoting Cornelius J. Peck, *Washington's Partial Rejection and Modification of the Common Law Rule of Joint and Several Liability*, 62 WASH. L. REV. 233, 238 (1987)); *see also Cokas v. Perkins*, 252 F. Supp. 563, 565 (D.D.C.1966) ("The philosophy behind the allowance of contribution between tortfeasors is that the discharge of an obligation by one of the obligors without proportionate payment from the other gives the latter an advantage to which he is not equitably entitled.").

We find a decision of the United States District Court for the Eastern District of Washington helpful. There, the trial court considered the case of a student who visited a nurse's office, and later suffered a severe medical emergency resulting in his death. Ord. Denying Est.'s Mot. for Partial Summ. J. on Affirmative Defs., *Estate of Torres v. Kennewick Sch. Dist. No. 17*, No. 4:19-CV-05038-MKD, at 2 (E.D. Wash. Mar. 28, 2024), https://www.govinfo.gov/content/pkg/USCOURTS-waed-4_19-cv-05038/pdf/USCOURTS-waed-4_19-cv-05038-9.pdf [https://perma.cc/BB75-JTWK]. The decedent's estate moved for partial summary judgment to dismiss the school's affirmative defense that the "actions and inactions of the [then-non-party municipality] were the sole proximate cause of the damages and injuries claimed by Plaintiffs herein and/or an intervening/superseding act." *Id.* at 4. The estate argued that "as a matter of law," medical aid as the result of an

injury is foreseeable, and thus the paramedics cannot be "a party at fault for" the estate's injuries. *Id.* at 12.

The court rejected this argument, holding the "*Lindquist* rule . . . does not require that the original tortfeasor be the only one subject to liability." *Id.* at 19. The court explained that "each of those elements [in Section 457]—whether the efforts were 'normal,' made to 'render aid', and were 'reasonably required'—are questions of fact for a jury to answer," as part of its separate "determination of which actors were the cause of an injury." *Id.* at 16 (quoting *Lindquist* II, 92 Wn.2d at 262; RESTATEMENT (SECOND) OF TORTS § 457) & 20. But as here, the question is whether a second alleged tortfeasor may, as a matter of law, be apportioned fault under RCW 4.22.070(1), which the estate argued "contradict[ed] the *Lindquist* rule." *Id.* at 18. The district court rightly concluded that trials courts "must apply both the *Lindquist* rule and RCW 4.22.070." *Id.* at 19. "To construe the *Lindquist* rule in a manner precluding apportionment would defy the Washington legislature's intent and the Washington Supreme Court's interpretation of Washington law." *Id.* at 24. In other words, "[w]here there are successive tortfeasors, even if one acted while treating an injury caused by the other, 'the trier of fact still must determine and apportion the responsibility based upon the varying degrees of culpability and causation among the actors.'" *Id.* (quoting *Tegman v. Accident & Med. Investigations, Inc.*, 150 Wn.2d 102, 116-17, 75 P.3d 497 (2003)).[3]

---

[3] Our holding is consistent with *Restatement (Second) of Torts* § 457, cmt. d, where "the actor is answerable only for injuries which result from the risks normally recognized as inherent in the necessity of submitting to medical, surgical, or hospital treatment. He is not answerable for harm caused by misconduct which is extraordinary and therefore outside of such risks." (Emphasis added). In other

8

In short, Respondents' reliance on the original tortfeasor rule does not shield them from liability, should causation be established. To the extent the superior court relied on such theory, it was error. In turn, we hold the court improperly dismissed Cruz's professional negligence claims against Respondents.[4]

C.      Breach of Contract Claim

Citing *Owens v. Harrison*, 120 Wn. App. 909, 915, 86 P.3d 1266 (2004), Respondents next argue that Cruz's breach of contract claim is duplicative of her professional negligence claims and thus was properly dismissed. We agree.

"'A single claim for relief, on one set of facts, is not converted into multiple claims, by the assertion of various legal theories.'" *Hurley v. Port Blakely Tree Farms L.P.*, 182 Wn. App. 753, 769-70, 332 P.3d 469 (2014) (quoting *Pepper v. J.J. Welcome Const. Co.*, 73 Wn. App. 523, 546, 871 P.2d 601 (1994), *overruled on other grounds by Phillips v. King County*, 87 Wn. App. 468, 943 P.2d 306 (1997)). Thus, a "'party's characterization of the theory of recovery is not binding on the court. It is the nature of the claim that controls.'" *Id.* at 771 (quoting *Pepper*, 73 Wn. App. at 546).

---

words, subsequent medical providers' gross negligence is excluded from the original tortfeasor rule. *Id.*; *see also Lindquist v. Dengel*, 20 Wn. App. 630, 634-35, 581 P.2d 177 (1978) ("*Lindquist* I") (citing comment d and a Virginia case to posit it is unreasonable to expect an original tortfeasor anticipate subsequent medical providers' gross negligence) (citing *Corbett v. Clarke*, 187 Va. 222, 227, 229-30, 46 S. E. 2d 327 (1948)); *see also Dalen v. St. John Med. Ctr.*, 8 Wn. App. 2d 49, 61, 436 P.3d 877 (2019) (noting gross negligence is substantially greater than, and thus distinct from, ordinary negligence).

[4] Respondents also claim they are shielded from liability because the Owners have fully accepted liability. In fact, the Owners denied liability in their answer and declined to accept "100% liability" in response to one of Cruz's interrogatories.

More specific to the issue at hand, "[w]hether an action is in contract or tort depends on the pleadings and evidence relied on." *Owens*, 120 Wn. App. at 915. "'An action sounds in contract when the act complained of is a breach of a specific term of the contract, without reference to the legal duties imposed by law on that relationship.'" *Id.* (quoting *G.W. Constr. Corp. v. Prof'l Serv. Indus., Inc.*, 70 Wn. App. 360, 364, 853 P.2d 484 (1993)). "If the tortious breach of a duty, rather than a breach of a contract, gives rise to the cause of action, the claim is not properly characterized as breach of contract." *Id.* Thus, if a contract claim is properly characterized as a tort claim, the contract claim is properly dismissed as duplicative. *Id.* at 916.

Here, Cruz's complaint alleges "Breach of Veterinary Services Contract" alongside a claim for professional negligence. In support of her breach of contract claim, she claims she "entered into a professional services contract with VSC to skillfully, carefully, diligently, and in a workpersonlike manner perform services to the assumed standard of a veterinary emergency and specialty practice" and "[s]uch standard was materially breached in several respects as stated herein." Cruz does not cite a specific written contract term and instead, as acknowledged in her brief, cites an "an implied condition of competency."

Thus, similar to *Owens*, Cruz does not "allege that [VSC] breached a specific term of the contract." 120 Wn. App. at 916. Rather, Cruz presents a claim analogous to a negligence claim where the party "failed to exercise the necessary degree of care," *id.*, or "standard of a veterinary emergency and specialty practice," as Cruz's complaint phrased it. Such a claim is highly similar to Cruz's negligence

claim which alleges the Respondents' actions "fell below the standard of care for a reasonably prudent veterinarian and veterinary emergency and specialty facility." Thus, Cruz's contract claim reasserts a breach of the standard of care alongside her negligence claim.

As such, we hold Cruz's claim "is a tort action and the trial court did not err by dismissing [her] breach of contract claim" against Respondents. *Owens*, 120 Wn. App. at 916.

### III.     CONCLUSION

We reverse the court's summary judgment order in part and affirm only the court's dismissal of Cruz's breach of contract claim. We remand for further proceedings consistent with this opinion.

Díaz, J.

WE CONCUR: